THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT GORHAM, Defendant-Appellant.

First District (3rd Division)    No. 77-898

Opinion filed June 28, 1978.—Rehearing denied January 9, 1979.

Ralph Ruebner and Richard J. Geddes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Robert Gorham, was charged with the murder of Kenneth Thompson. After a jury trial, defendant was found guilty of that crime and the court sentenced him to 100 to 200 years. The sole issue on appeal is whether the trial court erred in denying defendant's pretrial motion to suppress his confession.

·At the hearing on the motion the following evidence was adduced. At approximately 4 p.m. on April 2, 1976, Officers Carl Kuester and Joseph Robustelli of the Chicago Heights Police Department arrested defendant in a drug rehabilitation center in the city of Peoria. Robustelli read the complaint and warrant to defendant and Kuester read defendant his *Miranda* rights. Defendant did not respond. Defendant was involved in a methadone program and had received an eight-milligram dosage that morning. Defendant was not interrogated.

Defendant was brought before a judge in Peoria. Following a hearing the judge remanded defendant to Cook County. The officers and defendant arrived in Chicago at 9:30 p.m. Defendant was not questioned during the trip.

Upon arriving at the Cook County Criminal Courts building, defendant was taken to assistant State's Attorney Gillis' office. Kuester and Robustelli turned defendant over to a Lieutenant Barger and departed. Prosecutors Helsel and Prendergast and, later, IBI agent Thomas Naughton also were present.

Barger advised defendant of his *Miranda* rights and asked him if he wished to make a statement. He told defendant that the arrest warrant could not have been secured without some evidence. Defendant asked, "What evidence?" but Barger did not reveal any evidence to him. According to Barger, defendant said he did not wish to make a statement.

IBI agent Naughton testified that when asked by Barger if he would make a statement, defendant replied it was a "pretty heavy beef" and he was not sure whether he wished to make a formal statement. Defendant said he had spent four years at Menard and many people there were convicted only because they did give statements. Defendant was not sure he wanted "to go that route." After Barger left the room Naughton asked defendant whether he ever felt guilty and defendant replied that sometimes he did. Naughton also asked defendant why he was so foolish to sell the gun when the murder was such "a good hit." Defendant stated he sold the gun to obtain dope.

At about 10 p.m., Robustelli and Kuester returned to the prosecutor's

office. They again advised defendant of his rights and he stated that he understood them. They asked defendant if he wanted to talk about "it" and he asked "about what?" Robustelli told defendant that the police had recovered the gun and knew that the murder had been committed to obtain insurance money. Defendant was told that the authorities knew how the insurance money had been spent. He was then told that Kathleen Thompson, decedent's widow, had been arrested and had told the police everything.

Defendant asked if she was in the building. When told that she was, he asked that he be allowed to see her. She was brought to the office immediately.

When Thompson entered, defendant asked her what she had told the police. After Barger told her to tell defendant, she said, "I told them everything." She sat on the couch with defendant and they kissed. Thompson told defendant that they should tell the police everything and get it all out in the open. At approximately 10:15 p.m. defendant gave the officers an oral statement relating his involvement in the murder of decedent.

At approximately 11:15 p.m., in the presence of two prosecutors, Officer Kuester, and a court reporter, defendant gave a statement. When reduced to writing, it consisted of 42 pages. Defendant read, corrected, and signed each of 42 pages. The prosecutors signed as witnesses, and testified that defendant did not exhibit any physical signs of withdrawal, was offered food, and was not coerced. In the statement defendant admitted that he conspired with decedent's wife to kill decedent in order to get the latter's insurance. Defendant described the murder in detail.

At the hearing, defendant testified that he was 25 years old and had an 11th grade education. His testimony concerning his arrest and the trip to Chicago corroborated that given by the police officers. He also stated that he was advised of his rights. He testified that he replied negatively when asked if he would like to make a statement. According to defendant, Robustelli told him he would get "100 to 300" if he did not make a statement. Robustelli subsequently denied having said that to defendant. Defendant also testified that he told others he did not wish to make a statement and denied having requested to see decedent's widow. He further stated that she told him things would go easier for him if he talked and the police confirmed this statement. Robustelli said repeatedly that defendant "was going to get jammed if [he] didn't go along with him." Robustelli also denied making that statement. According to defendant, when he asked for his medication, a prosecutor told him that if things worked out with the police it would work out with him. Defendant testified that he was told things would be easier for the widow if he gave a statement and that he did so to protect her because she was carrying his

child. He testified that at the time his joints were aching and that he suffered some other discomforts of withdrawal.

Defendant testified that he had been arrested a number of times before and had served time in prison. He knew what his *Miranda* rights were. He was aware of what was happening when his rights were read to him and he knew what he was doing when he signed the statement.

After hearing arguments, the trial court denied the motion to suppress the confession. Since the quantum of evidence at trial is not in issue, we shall mention briefly on the trial testimony of just one witness, decedent's widow.

Decedent was found shot to death in his van, on January 10, 1975, in an alley in Chicago Heights. Kathleen Thompson testified that she had a relationship with defendant. She told defendant about decedent's life insurance and said he was worth more dead than alive. Defendant agreed to kill decedent if she would split the insurance proceeds. Late on January 10, 1975, defendant telephoned her and said that "he had taken care of business." An hour later she learned her husband was dead. She used part of the insurance proceeds to purchase a $4,000 auto, a $1,600 motorcycle and a $500 boat for defendant.

Defendant contends that the trial court improperly denied his motion to suppress the confession. The issue is whether the evidence demonstrates that defendant knowingly and intelligently waived his right to remain silent.

Under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, when an accused invokes his right to remain silent, it is incumbent upon the authorities to cease interrogation. In *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, the Supreme Court interpreted that portion of the *Miranda* decision and stated that *Miranda* did not act as a permanent and absolute bar to continued or resumed questioning: "We therefore conclude that the admissibility of statements obtained after the person in custody had decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" 423 U.S. 96, 104, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.

■■ In *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, the court set forth the standard by which the State may show the accused voluntarily waived his rights. At page 227 the court stated:

> "An express, formalistic waiver is unnecessary for '[a]ny clear manifestation of a desire to waive is sufficient. The test is the showing of a knowing intent, not the utterance of a shibboleth. The criterion is not solely the language employed but a combination of that articulation and the surrounding facts and circumstances.' [Citation.] As in the present case, '[o]nce the defendant has been

informed of his rights and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them."

When defendant was arrested, he was advised of his rights and no interrogation took place. Later, in the drive to Chicago, he was not questioned. Upon his arrival in the prosecutor's office, defendant again was advised of his rights. At the hearing on the motion, defendant stated he was aware of his rights and understood what was said to him. When defendant was informed that the authorities possessed considerable evidence, defendant inquired about the evidence. Defendant asked what could be done for him and was told that nothing could be done. According to Naughton, defendant vacillated and continued to consider whether he should talk. Naughton testified that defendant was mulling over what he believed to be the consequences of making a statement.

When Officers Robustelli and Kuester returned that evening, they asked defendant if he wanted to talk about it. Defendant asked, "about what?" The officers informed defendant of some specific evidence, including the widow's statement. When, pursuant to his request, the widow was brought to defendant, he immediately asked what she had told the police. While defendant denies that these proceedings occurred and asserts that he was coerced by promise of leniency and threats of imprisonment, these assertions were denied by State's witnesses.

■■ ■ It is not psychological coercion in violation of *Miranda* to reveal incriminating evidence against a defendant. (*People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040.) Defendant's insistence that he was undergoing withdrawal pains is unsupported elsewhere in the record. The State's witness testified that he was offered food and did not exhibit any symptoms of physical suffering. The trial court heard the evidence and its determination must be upheld unless it is contrary to the manifest weight of the evidence. *People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7.

■■ In *People v. White* (1975), 61 Ill. 2d 288, 335 N.E.2d 457, defendant had exercised his right to remain silent and had requested an attorney when questioning was resumed. Defendant then relented and confessed to the crime. The court found that defendant had a low I.Q. and that *Miranda* was violated by failing to furnish defendant with an attorney as requested. The court held, however, that his familiarity with *Miranda* warnings through previous police encounters along with repeated admonitions operated to dissipate any taint. Similarly, in the present case, defendant acknowledged his familiarity with the system and knowledge of his rights. He did not request an attorney nor did he unequivocally exercise his right to remain silent. There is ample evidence in the record

that the situation was free from psychological and physical coercion. Therefore, defendant's decision to give a statement was not made in violation of his "right to cut off questioning." *Michigan v. Mosley* (1975), 423 U.S. 96, 104, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.

Defendant was given *Miranda* warnings on two separate occasions after arriving at the prosecutor's office. He also was warned of his rights before giving the written statement. Defendant agreed to give the statement 30 minutes after he first entered the office. There also is considerable evidence that he did not elect to remain silent. One of the officers testified that defendant was not sure whether he wished to make a statement. Several officers testified that he questioned them about the evidence which had been obtained. Where a person in custodial interrogation continues to discuss the matter, that person does not manifest a desire to terminate the questioning and there has been no denial of rights if the questioning is continued. (*People v. Nestrick* (1977), 45 Ill. App. 3d 519, 359 N.E.2d 503.) The question of a confession's competency is for the trial court and in making its decision the court need not be convinced beyond a reasonable doubt. *People v. Medina* (1978), 71 Ill. 2d 254, 375 N.E.2d 78.

■■ In the present case, defendant chose not to remain silent. He understood his rights and voluntarily waived the exercise of those rights. The trial court properly denied defendant's motion to suppress the confession.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JIGANTI, P. J., and McGILLICUDDY, J., concur.