UNITED STATES of America ex rel.
Robert GORHAM,
Petitioner-Appellee,

v.

Gayle FRANZEN and James Greer,
Respondents-Appellants.

No. 81–1788.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1981.

Decided April 19, 1982.

Martin Carlson, Asst. Deputy Defender, Chicago, Ill., for petitioner-appellee.

Neal B. Goodfriend, Asst. Ill. Atty. Gen., Chicago, Ill., for respondents-appellants.

Before SWYGERT, Senior Circuit Judge, and PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

Robert Gorham (Gorham or petitioner) filed a successful habeas corpus petition in the district court, alleging that his Fifth Amendment privilege against self-incrimination had been violated by the introduction of a confession in his state trial. According to Gorham, the confession had been obtained from him in a custodial interrogation renewed immediately after he had refused to make a statement. The state trial court, after a pre-trial evidentiary hearing, had orally admitted the confession. The state appellate court, on Gorham's appeal from his conviction, had determined in a written opinion that Gorham had equivocated when asked if he would like to make a statement, and therefore concluded that the continued interrogation did not violate his Fifth Amendment rights. The Illinois Supreme Court denied leave to appeal. The federal district court granted Gorham's habeas petition without conducting an evidentiary hearing, predicated on its determination from the state court record that Gorham had refused to make a statement. As the constitutional violation alleged turns on whether Gorham did or did not refuse to make a statement, the determinative issue is whether the district court erred in issuing the writ based on its determination from the state court record that Gorham had refused to make a statement.

I. Prior Proceedings

A. The State Court Proceedings

On April 2, 1976, Gorham and Kathleen Thompson were arrested for the murder of

Kathleen's husband, Kenneth Thompson, on January 10, 1975. Prior to his trial, the petitioner filed a motion to suppress a forty-two page confession which he had given and signed the day of his arrest. The petitioner's motion objected to the confession as "involuntary" because it had been elicited by threats of force, denial of medication, and promises of leniency. The motion makes no mention of Gorham's purported refusal to make a statement.

The evidence presented in the pre-trial hearing on the motion is summarized in the state appellate court decision, *People v. Gorham*, 66 Ill.App.3d 320, 23 Ill.Dec. 370, 384 N.E.2d 6 (1st Dist. 1978), and need not be repeated here. The crucial portions of the record of the hearing for purposes of this appeal are the statements of the witnesses as to Gorham's response when asked to make a statement.

A Lieutenant Barger testified that during Gorham's interrogation he had "... asked him [Gorham] if he wished to make a statement relative to the charge against him and he didn't want to make any statement at that time." On cross-examination, however, Barger testified:

Q. What did you do after you read him his rights?

A. I asked him would he like to make a statement regarding his charge.

Q. He said no, is that correct?

A. He said no.

According to Illinois Bureau of Investigation agent Thomas Naughton, Gorham responded to Barger's question as follows:

Mr. Gorham said it was a pretty heavy beef, he is not quite sure whether or not he would want to make a formal statement, that he did four years at Menard and there was plenty of people at Menard who were there only because they did give statements and he then said he is not quite sure whether he would want to go that route.

On cross-examination, Naughton said that Gorham was "mulling over whether or not he was willing to make a statement or wanted to make a statement."

The state appellate court noted that Assistant State's Attorneys Helsel and Prendergast were also present during the initial interrogation. Prendergast did not testify. Helsel testified:

Q. Now during the 10 or 15 minutes period that you were with Mr. Gorham and Lt. Barger I believe it is your testimony that Lt. Barger said words to the effect, "we couldn't have gotten this arrest warrant unless we had some evidence." Did he say that to Mr. Gorham?

A. Yes, sir.

Q. Did he also ask Mr. Gorham to make a statement?

A. I believe he asked him if he wanted to make a statement at that point.

Q. Now during this period of time, that 10 or 15 minutes Mr. Gorham declined or refused to make a statement, isn't that correct?

A. To the best of my recollection, yes.

At approximately 10:00 p. m., Barger and Helsel left the room in which Gorham was being interrogated and spoke to Officers Kuester and Robustelli who subsequently continued Gorham's interrogation. Robustelli described his conversation with them as follows:

Q. Approximately 10:00 o'clock Lt. Barger came out of the office accompanied by Mr. Helsel, is that correct?

A. That is correct.

Q. And at that point would it be fair to say you were relieving them in the interrogation of Mr. Gorham?

A. No, I was not in the office when Lt. Barger and Mr. Helsel was in there. When they came out I had a conversation with them and I went in to talk to Mr. Gorham along with Detective Kuester.

Q. Well, about 9:45 Lt. Barger and Mr. Helsel went into Mr. Gillis' office with the purpose of interrogating Mr. Gorham, is that correct?

A. That is correct.

Q. And when they came out about 10:00 o'clock Mr. Gorham had declined to make any statement, isn't that correct?

A. That is correct, in fact that was my conversation with Lt. Barger.

Similarly, Officer Kuester testified:

Q. And when they [Barger and Helsel] came out they indicated to you that up to that point Mr. Gorham had declined to make a statement, is that correct?

A. Yes.

Yet, Barger testified:

Q. When you left the room after you had been there about 15 minutes you had a brief conversation with Sergeant Robustelli and Detective Kuester, isn't that correct?

A. Yes, sir.

Q. What did you tell them?

A. I asked them if they would go in and talk to him.

Q. And do you remember the exact words you said?

A. I told them I haven't told him anything and I want you to try to talk to him.

Q. Did you say I want you to try to get a statement from him, he wouldn't give me a statement?

A. I said I want you to try to talk to him.

Q. Well, isn't it true that you asked them to relieve you in the interrogation?

A. I wanted them to question him.

After this conversation, Kuester and Robustelli went into the office to interrogate Gorham.

At the conclusion of the evidentiary hearing on the motion to suppress, the trial court orally denied the motion. Following a jury trial in which the confession was introduced, the petitioner was convicted of murder and sentenced to a term of 100 to 200 years.

The petitioner appealed his conviction to the Illinois Appellate Court contending that the trial court had erred in denying the motion to suppress the confession. The opinion of the appellate court affirming Gorham's conviction, *People v. Gorham*, 66 Ill.App.3d 320, 23 Ill.Dec. 370, 384 N.E.2d 6 (1st Dist. 1978), begins by summarizing the evidence from the evidentiary hearing on

the motion to suppress. After a review of the law on interrogation after an individual has invoked the right to remain silent, the opinion of the court proceeds to set forth the following factual findings pertinent to this appeal:

When defendant was arrested, he was advised of his rights and no interrogation took place. Later, in the drive to Chicago, he was not questioned. Upon his arrival in the prosecutor's office, defendant again was advised of his rights. At the hearing on the motion, defendant stated he was aware of his rights and understood what was said to him. When defendant was informed that the authorities possessed considerable evidence, defendant inquired about the evidence. Defendant asked what could be done for him and was told that nothing could be done. According to Naughton, defendant vacillated and continued to consider whether he should talk. Naughton testified that defendant was mulling over what he believed to be the consequences of making a statement.

66 Ill.App.3d at 324, 23 Ill.Dec. at 373, 384 N.E.2d at 9 (1st Dist. 1978). The court concluded that Gorham "did not request an attorney nor did he unequivocally exercise his right to remain silent." After remarking that the petitioner was given *Miranda* warnings on two separate occasions within the thirty minutes of interrogation, the court found:

There also is considerable evidence that he did not elect to remain silent. One of the officers testified that defendant was not sure whether he wished to make a statement. Several officers testified that he questioned them about the evidence which had been obtained.

\*  \*  \*  \*  \*  \*

In the present case, defendant chose not to remain silent. He understood his rights and voluntarily waived the exercise of those rights. The trial court properly denied defendant's motion to suppress the confession.

66 Ill.App.3d at 325, 23 Ill.Dec. at 374, 384 N.E.2d at 10 (1st Dist. 1978). Thus, the

state appellate court affirmed the conviction, and the Supreme Court of Illinois subsequently denied Gorham's petition for leave to appeal. *People v. Gorham*, No. 51683 (March 29, 1979).

## B. Federal Court Proceedings

Gorham filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976), claiming only that his Fifth Amendment privilege against self-incrimination had been violated by introduction of the confession obtained from him by custodial interrogation renewed immediately after he had refused to make a statement. The state in response filed a motion for summary judgment. No evidentiary hearing was held prior to issuance of the district court's order on the habeas petition.

The order of the district court, after noting that the confession was not inherently untrustworthy, concluded that the Illinois courts had erroneously resolved the Fifth Amendment issue. This conclusion was predicated on the court's determination that the factual finding of the Illinois appellate court that Gorham did not "unequivocally exercise his right to remain silent" was "contradicted by substantial evidence in the record." The evidence which, according to the court, contradicts the finding is the testimony of Barger and Helsel. Based on their testimony, the district court concluded that the testimony of the state's own witnesses had failed to indicate that Gorham had equivocated as to whether he wanted to make a statement.

The district court addressed the testimony of Naughton only in a footnote, stating:

> The only evidence adduced at the hearing to the effect that Gorham might have not asserted his rights is I.B.I. Agent Naughton's somewhat equivocal opinion that Gorham was "mulling over whether or not he was willing to make a statement or wanted to make a statement." Agent Naughton's testimony, however, gives no basis for ultimately concluding that Gorham subsequently waived his right to remain silent.

To buttress its conclusion that Gorham did not equivocate, the district court also noted the testimony of Kuester and Robustelli that up to the time Barger and Helsel left the office Gorham had "declined" to make a statement. Finally, the court considered the testimony of Barger that he wanted Kuester and Robustelli to go into the office to question Gorham as indicating that Gorham had refused to give a statement to Barger.

On the basis of this evaluation of the record, the district court stated, "... it is clear that Gorham had refused to relinquish his Fifth Amendment right to remain silent. And, on the basis of the applicable precedent, any further interrogation should have ceased immediately." Compounding the problem, according to the court, was the presentation of Kathleen Thompson to the petitioner during the interrogation. The court remarked that using her to confront Gorham and thereby persuade him to "abandon his immediately prior assertion of rights" aggravated the Fifth Amendment violation. Accordingly, the district court denied the state's motion for summary judgment, granted the petitioner's application for a writ of habeas corpus, and remanded the case for a new trial in the state court.

## II. Discussion

### A. *Miranda* and the "Right to Cut Off Questioning"

The landmark decision of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), delineated procedures to be followed in custodial interrogations to safeguard the accused's Fifth Amendment privilege against self-incrimination. *Miranda* required that prior to any questioning, the person must be warned that he has a right to remain silent. Once this and additional safeguards have been followed, the person may waive his right to remain silent, provided that the waiver is made voluntarily, knowingly, and intelligently. The crucial provision of the *Miranda* decision for purposes of the present appeal is the following prerequisite to an effective waiver of the right to remain silent:

If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. * * * Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. 384 U.S. at 473–74, 86 S.Ct. at 1627 (1966).

The district court disagreed with the state appellate court's "finding" that Gorham did not "unequivocally exercise his right to remain silent." Despite this language of the court, it is clear from the remainder of the district court opinion that the finding with which the district court disagreed is the factual finding that Gorham equivocated as to whether he wanted to make a statement. The petitioner correctly acknowledges that petitioner's constitutional claim turns on resolution of this factual question. The question of whether Gorham exercised his right to remain silent is a separate determination, a conclusion of law or at the least a mixed determination of law and fact, see, e.g., United States ex rel. Ross v. Franzen and Wolff, 668 F.2d 933, 938 (7th Cir. 1982), that is not otherwise at issue in this appeal.

B. The Standard of Review in Federal Habeas Proceedings for Factual Findings by the State Courts

In Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court emphasized that the 1966 amendment to the habeas corpus statute, 28 U.S.C. § 2254 (1976), which added section 2254(d) to the statute, was an attempt by Congress to "alleviate" the friction between state and federal courts resulting from the ability of the federal courts to overturn state court decisions under the habeas statute. Sumner v. Mata, 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). Toward this end, section 2254(d) provides that "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . [and] evidenced by a . . . written opinion . . .

shall be presumed to be correct" unless the petitioner for a federal writ of habeas corpus can establish one of the eight enumerated causes for exception to the presumption. United States ex rel. Ross v. Franzen and Wolff, 668 F.2d 933, 937 (7th Cir. 1982).

■ One of these eight causes for exception to the presumption of correctness is that contained in section 2254(d)(8). Under that section, state court factual findings are entitled to a presumption of correctness

. . . unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record. . . .

28 U.S.C. § 2254(d)(8) (1976). Clearly, findings of fact made by a state appellate court are considered "determination[s] after a hearing on the merits" within the strictures of 28 U.S.C. § 2254(d)(8). Bruce v. Duckworth, 659 F.2d 776 (7th Cir. 1981).

In this case, the factual finding of the state appellate court was clearly entitled to a presumption of correctness by the district court unless the finding was not "fairly supported" by the state record as a whole. The only portion of the state record which sheds any light on whether Gorham refused to make a statement is the report of the testimony presented in the pre-trial evidentiary hearing on the motion to suppress.

C. The Testimony of Naughton, Helsel, and the Police Officers

In concluding that the petitioner had equivocated after Lieutenant Barger had asked if he would like to make a statement, the state appellate court relied primarily on the testimony of Naughton and discredited the testimony of the petitioner. The district court, in its review of the exact same record of the evidentiary hearing which had been before the state appellate court, interpreted the testimony of Barger and Helsel,

buttressed by that of Kuester and Robustelli, as contradicting the testimony of Naughton. On that basis, the district court rejected the state appellate court's factual finding.

As noted above, Barger initially testified that he had ". . . asked him [Gorham] if he wished to make a statement relative to the charge against him and he didn't want to make any statement at that time." Although the petitioner contends that Barger's qualification "at the time" in his testimony was merely his own characterization, there is no apparent reason for Barger to have qualified Gorham's response or reaction in such a way unless Gorham had in some way conveyed such a limitation on his own response. Thus, this portion of Barger's testimony tends to corroborate Naughton's testimony that Gorham was evaluating the consequences of making a statement. However, Barger's testimony on cross-examination was that Gorham had said "no" when asked to make a statement. To the extent that Barger's cross-examination contradicted his earlier testimony, it rendered his testimony as a whole somewhat ambiguous and inconclusive.

However, the testimony of Prosecutor Helsel and Officers Kuester and Robustelli appears to support the district court's rejection of the state court finding. In response to a question as to whether Gorham had "declined or refused" to make a statement, Helsel responded, "To the best of my recollection, yes." Similarly, the testimony of Officers Kuester and Robustelli (neither of whom, however, was present at the time when Barger asked Gorham to make a statement) indicates that Gorham "declined" to make a statement.

█ If we had only the present testimony of Helsel, Kuester, and Robustelli, we would agree with the district court that the state court finding was not fairly supported by the record as a whole. However, the district court erred in issuing the habeas corpus writ without conducting an eviden-tiary hearing of its own. The Supreme Court has delineated the circumstances in which a federal court must conduct an evidentiary hearing, and such a hearing is ordinarily mandated when the factual finding of the state court is not fairly supported by the *record as a whole*. *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–757, 9 L.Ed.2d 770 (1962).[1] The necessity for an evidentiary hearing is particularly compelling in this case. Although the testimony of Helsel, Kuester, and Robustelli appears to contradict the state court's finding, their testimony upon further exploration may reveal that Gorham "declined" to make a statement in the sense of equivocating or simply failing to make a statement at that time. The state and the petitioner do not even agree on whether Helsel and Prendergast were in the room when Barger asked Gorham to make a statement. Moreover, the inherently contradictory testimony of Barger could be clarified, as well as the portion of his testimony which appears to conflict with that of Kuester and Robustelli.

The reason for the inadequacy of the state record is clear. In the pre-trial motion to suppress the confession, the petitioner claimed only that the confession was elicited by threats of force, denial of medication, and promises of leniency. The question of whether Gorham had refused to make a statement did not become the focal point of contention until Gorham's appeal from his conviction. Thus, in the pre-trial evidentiary hearing, the focus of the inquiry did not necessitate full exploration of Gorham's response to Barger's inquiry. Because the petitioner has established a prima facie case that the state appellate court's factual finding is not fairly supported by the record and his right to relief turns on facts which are in dispute, the state must be given an opportunity to introduce evidence upholding the validity of its action. *Aston v. Warden, Powhatan Correctional Center*, 574 F.2d 1169, 1172 (4th Cir. 1978);

1. There is even some suggestion in *Heyd v. Brown*, 406 F.2d 346 (5th Cir.), *cert. denied*, 396 U.S. 818, 90 S.Ct. 53, 24 L.Ed.2d 69 (1969), that conflicts in testimony necessitate an evidentiary hearing *before* the court can determine that a finding is not fairly supported by the record.

*United States ex rel. McNair v. New Jersey*, 492 F.2d 1307 (3d Cir. 1974). The failure of the state to include such a request in its motion for summary judgment filed in response to the petition for a writ of habeas corpus did not operate as a waiver of any right to a hearing, *Mitchell v. Follette*, 358 F.2d 922 (2d Cir. 1966), although the Supreme Court has indicated that the better procedure "would be for the custodian 'to indicate in any submission asking dismissal as a matter of law, the proceedings to which it deems itself entitled if its request should be denied.' " *Browder v. Director, Illinois Department of Corrections*, 434 U.S. 257, 266 n.12, 98 S.Ct. 556, 561 n.12, 54 L.Ed.2d 521 (1978) (quoting *Mitchell v. Follette*, 358 F.2d at 929).

We conclude that the state should be given the opportunity to ask for an evidentiary hearing and therefore this case will be remanded to the district court for further proceedings in accordance with this opinion.

We note in passing that the district court concluded that the failure to cease interrogation after Gorham had refused to make a statement was aggravated by the presentation of Kathleen Thompson to Gorham. The court relied on *United States v. Olof*, 527 F.2d 752 (9th Cir. 1975), and *United States ex rel. Doss v. Bensinger*, 463 F.2d 576 (7th Cir. 1972), *cert. denied*, 409 U.S. 932, 93 S.Ct. 239, 34 L.Ed.2d 186 (1972), for the proposition that confronting an accused with incriminating evidence after a refusal to give any statement violates *Miranda*. On the other hand, it is clear that it is not coercive for officers merely to reveal incriminating evidence to the accused. *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Griffin v. Peyton*, 284 F.Supp. 650 (D.Va.1968). Resolution of this issue will ultimately depend upon determination of whether Gorham did or did not refuse to make a statement.

## D. Harmless Error

Introduction of an unlawful confession may fall within the parameters of harmless

error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As the district court noted, the confession was not inherently untrustworthy. If a confession, otherwise voluntary, is inadmissible for failure to comply with the strict procedural requirement of *Miranda*, the court may find beyond a reasonable doubt that its use at trial was harmless and could not have affected the outcome. *United States v. White*, 607 F.2d 203, 209–10 (7th Cir. 1979), *cert. denied*, 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981).

In this appeal, we are also urged by the state to reverse the court below and to premise our decision on harmless error. We do note that there was, aside from Gorham's confession, extensive physical and testimonial evidence implicating Gorham in the murder of Kenneth Thompson. Kathleen Thompson testified in detail as to how she and the petitioner had planned the murder of her husband. She also testified that the petitioner had described the murder to her sometime after her husband had been killed. Ballistics analysis of the bullet and parts of the gun used in the killing indicated that the murder weapon was the same gun sold by a James Olendorf to the petitioner. Gorham had admitted to Olendorf that he had "shot a guy on the hill" with the gun.[2]

Nevertheless, in light of the specific details of the confession and its prominence in the trial, we are reluctant to base our decision on harmless error and think it more appropriate to pursue the course we now do. We hold that the district court erred in issuing the writ of habeas corpus and denying the state's summary judgment motion without granting the state an opportunity for an evidentiary hearing. We therefore vacate the order of the district court granting the writ and remand to the district court for further proceedings in accordance with this opinion.

Vacated and Remanded.

---

2. The prosecution may have had a sounder case by not offering Gorham's confession. With the benefit of hindsight, Kathleen Thompson's testimony, Gorham's admissions to Thompson and Olendorf, and the ballistics evidence seem ample to have supported his conviction absent the confession.

SWYGERT, Senior Circuit Judge, dissenting.

Because I believe that the order of the district court granting the writ of habeas corpus should be affirmed, I respectfully dissent. The majority concedes that the petitioner has established a prima facie case that the state appellate court's finding is not fairly supported by the record and yet remands the cause for an evidentiary hearing. Gorham's constitutional claim turns on the resolution of one factual question: Did Gorham unequivocally exercise his right to cut off questioning? The majority believes that the facts surrounding this question are in dispute. I believe that the record establishes beyond doubt that Gorham exercised his right to remain silent and this right was not "scrupulously honored." *Michigan v. Mosely*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).

Four people were present at various times during Gorham's initial interrogation from 9:45 to 10:00 P.M. on April 2, 1976. Of these four people, three testified at the pretrial motion to suppress the confession. Barger testified that Gorham responded, "No," when asked if he would like to make a statement. Helsel testified that to the best of his recollection, Gorham declined or refused to make a statement. Naughton testified that Gorham was mulling over whether he would make a statement. The reliability of Barger's and Helsel's testimony, however, is bolstered by the testimony of two additional witnesses not present during the initial interrogation. When Barger and Helsel left the room at 10:00 P.M., they indicated to officers Kuester and Robustelli that Gorham had declined to make a statement up to that point and Kuester and Robustelli so testified. Further, the fact that Kuester and Robustelli were asked to replace Barger and Helsel as the interrogators is highly indicative of the fact that Gorham refused to give a statement from 9:45 to 10:00 P.M. Almost all the evidence (the circumstantial evidence surrounding the interrogation and the testimony of four witnesses) supports Gorham's petition. Only the testimony of Naughton supports the majority's position.

The majority seems to think it is important that Barger testified that Gorham refused to give a statement "at that time." The majority believes that there is no apparent reason for Barger to have qualified Gorham's response. People, however, often editorialize. The cross-examination makes it abundantly clear that Barger was in fact editorializing. Moreover, even if we assume that Gorham did say he would not give a statement at that time, he still exercised his right to remain silent. If Gorham, by using the words "at this time," indicated that he would waive his right to remain silent in the future, it was not up to the police or the prosecutors to determine when the future had arrived. The use of the words, "No, not at this time," should have been sufficient to cut off questioning.

The majority also thinks it important that Gorham "declined" to make a statement. The majority believes that "further exploration may reveal that Gorham 'declined' to make a statement in the sense of equivocating. . . ." Majority opinion at 11. It is inconceivable that "decline" can indicate an equivocal response. The majority has discovered a meaning for the word "decline" not found in any dictionary.

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), provides that:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion. . . .

If two of the four individuals present during the interrogation (and two out of three who actually testified) indicated that Gorham refused or declined to make a statement, Gorham must have indicated in some manner that he wished to remain silent. This cannot seriously be disputed; this is all that *Miranda* requires. *Miranda* does not compel a prisoner to convince everyone present that he will remain silent. The

language of *Miranda* is broad, as should be the protections surrounding a prisoner's Fifth Amendment rights. Gorham's interrogation should have ceased at 10:00 P.M. or perhaps sooner. An evidentiary hearing, which was not requested by the Government, will not make this any clearer.

I would affirm the order.