**UNITED STATES of America, ex rel. Orris BALLARD, Lawrence Ballard, Serge Gaudry, Petitioners-Appellants,**

v.

**Paul BENGSTON, Sheriff of Winnebago County, Respondent-Appellee.**

No. 81–1430.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 19, 1983.*

Decided March 18, 1983.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

George C. Pontikes, Foss, Schuman & Drake, Chicago, Ill., Joseph P. Spiezer, Rockford, Ill., for petitioners-appellants.

Mark L. Rotert, Ill. Atty. Gen., Trial Div., Chicago, Ill., for respondent-appellee.

Before PELL, BAUER and COFFEY, Circuit Judges.

PER CURIAM.

This appeal from the denial of a petition for a writ of habeas corpus raises two issues: (1) whether, in an indictment charging theft by deception, the absence of any details as to the nature of the deceptive scheme employed rendered the indictment unconstitutionally vague; and (2) whether the trial judge's denial of a motion to withdraw as counsel on conflict of interests grounds violated petitioners' sixth amendment right to the effective assistance of counsel. For the following reasons, we reverse in part and remand for further proceedings not inconsistent with the views expressed herein.

## I. Facts

Petitioners and one Donald Russell, not a petitioner in this habeas corpus action, were indicted and charged with fifteen counts of theft by deception. Following a jury trial, each petitioner was found guilty on twelve counts and sentenced to two to eight years' imprisonment. The Illinois Appellate Court for the Second District affirmed the convictions in October, 1978.

At trial, thirteen witnesses testified that each had purchased a distributorship from a company named American International Tool Company, represented at each sale by either Lawrence Ballard or Donald Russell. Serge Gaudry was president of AITC and Orris Ballard acted as consultant and participated in several sales. The distributorships were sold for amounts varying between $3,000 and $8,500.

Written and oral promises were made by petitioners to "investors" as follows: (1) the marketing department of AITC would obtain locations for the placement of the distributorships; (2) large profits could be made due to a one-third markup for the retail store and a one-third markup for the investor; (3) the company would furnish locators, who would set up accounts and locations in high volume retail outlets; (4) the tools would be of the same high quality which the salesmen had demonstrated to the investor; and (5) a refund of the investment would be paid within one year of the date of the contract if either party desired to cancel, subject to certain adjustments for inventory outstanding.

The witnesses testified that they received small amounts of merchandise of poorer quality than had been represented, that the tools did not sell, and that the locations were not of the promised quality. They further testified that no profits were realized and that no refunds were received upon request. The "investors" ultimately were notified by letter that AITC had gone out of business.

The indictment read as follows:

That on or about the 27th day of December, 1972, in the County of Winnebago and State of Illinois, ORRIS BALLARD, LAWRENCE BALLARD, SERGE GAUDRY, DONALD RUSSELL committed the offense of theft, in that they knowingly obtained by deception, control over property of the own-

er to wit: an amount of money exceeding $150 belonging to Max Boynton, with the intent to deprive Max Boynton permanently of the use and benefit of the property, in violation of Paragraph 16–1, Chapter 38, Illinois Revised Statutes, (1971) as amended.

Each of the fourteen succeeding counts alleged theft by deception in the same manner as the first count except as to the date of the offense and the owner of the property.

Donald Russell filed a motion for a bill of particulars which was denied. No such motion was filed by petitioners, who were represented by other counsel.

The facts pertinent to resolution of petitioners' sixth amendment claim may be summarized as follows: Petitioners were indicted in May, 1975; they were arraigned in September, 1975, at which time Spiezer was retained as counsel. The trial date was set and rescheduled several times. On February 9, 1976, one week before trial was to commence, attorney Spiezer filed a motion to withdraw as attorney of record for Orris Ballard. The motion represented in pertinent part:

"3. That JOSEPH P. SPIEZER has become aware of conflict of interest among the defendants and does not feel he can represent all defendants in this case.

4. That the defendant, ORRIS BALLARD, has not cooperated with JOSEPH P. SPIEZER and therefore JOSEPH P. SPIEZER does not feel that he can adequately represent the defendant without his cooperation."

The motion was heard on February 16, 1976, the first day of trial. The following exchange took place:

"MR. SPIEZER: The problem I have, the first motion is in regard to Mr. Ballard is that recently a conflict has arisen. I don't know how I can explain them, without prejudicing your Honor. In the beginning—

THE COURT: Don't prejudice me, I will deny your motion. I have read the motion and I don't think it is well founded.

This case has been continued, continued, continued, continued. I believe these are nothing more than harassing motions to stall the trial."

During the course of the trial, attorney Spiezer again alerted the trial court to a possible conflict of interests. The following exchange took place:

"MR. SPIEZER: The problem is, Judge, I am representing Mr. Gaudry and Mr. [Orris] Ballard, and I have filed the motion previously. There may be some conflict, I think clearly a conflict has arisen and I am really concerned about what to do. On the witness stand in the State's examination, Mr. Gaudry, they have been dropping hints, more than dropping hints, they have been saying Ballard was, Orris Ballard was the 'brains behind the operation'. In my office Mr. Gaudry has maintained that no, he is, he said he was in charge.

THE COURT: I fail to see how that has been antagonistic to Orris Ballard.

MR. SPIEZER: My problem is, that things come out on the witness stand that do not come out perhaps in the lawyer's office. At this point in time I am not sure, but that perhaps Orris Ballard was the brains behind the operation so to speak, and if that is true, I have the obligation to go to Serge Gaudry and tell him, stick the finger at Orris. I can't do that because I represent Orris. I think there is a clear conflict and I should withdraw from somebody. Frankly, I would prefer to withdraw from Orris Ballard.

THE COURT: The trial at the stage we are at, I can't at this time allow you to withdraw and let Mr. Ballard defend himself.

MR. SPIEZER: My problem, what happens if tonight I talked to Serge, well, yes, it wasn't the truth. If the witness tells me I was covering for my father-in-law, you know, I feel bad about it.

THE COURT: Then you come and see me. This indictment was brought back in August as I recall, and you had since August to talk to these people, I presume you have talked to him many times.

MR. SPIEZER: Too often, Judge."

In their petition for a writ of habeas corpus, petitioners asserted that (1) the indictment's failure to set forth details of the various acts of deception with which they were charged rendered the document unconstitutionally vague and thereby denied them due process of law, and that (2) the trial judge's failure to inquire into an alleged conflict of interests following attorney Spiezer's pretrial motion to withdraw on this ground violated petitioners' sixth amendment right to the effective assistance of counsel.

The district court denied the petition for a writ of habeas corpus, holding that the indictment had the practical effect of apprising petitioners of the elements of the offenses with which they were charged, that it provided them with the information necessary to prepare their defenses, and that it adequately protects them from subsequent prosecutions for these same offenses. The district court further held that the trial judge did not err in refusing to grant attorney Spiezer's motion to withdraw in view of the trial judge's conclusion that the motion was filed for a dilatory purpose, and in view of Spiezer's failure to demonstrate an actual conflict of interests.

## II. Sufficiency of the Indictment

■ As an initial matter, respondents contend that petitioners' challenge to the sufficiency of the indictment does not raise a claim of constitutional dimension because the state appellate court determined, as a matter of state law, that the indictment was not fatally defective. Because the constitutional requirement of a grand jury indictment is not applicable to the states, *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232 (1884), the issue of the sufficiency of the indictment is largely one of state law. However, the validity of an indictment is subject to measurement against general fourteenth amendment guarantees of due process. *Peters v. Kiff,*

407 U.S. 493, 496, 92 S.Ct. 2163, 2165, 33 L.Ed.2d 83 (1972). Petitioners present a colorable challenge to the vagueness of the indictment on federal due process grounds.[1] To hold that they have not presented a claim of constitutional dimension because the indictment was found to be sufficient as a matter of state law would be to almost vitiate federal habeas review of state indictments. We turn then to the merits of petitioners' due process claim.

■ An indictment is constitutionally sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to meet, and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962) (citations omitted). Conversely, an indictment which does not apprise the defendant with reasonable certainty of the nature of the charge against him is defective even though it tracks the language of the pertinent statute. *See United States v. Garcia-Geronimo,* 663 F.2d 738, 741 (7th Cir.1981).

■ Without doubt the third criterion is satisfied by the indictment in this case. The indictment sets forth the dates of the offenses and the names of the victims. In view of the fact that petitioners may rely upon other parts of the record in the event that future proceedings are initiated against them, it is clear that they will be fully protected against prosecution for the same offenses. *See Russell v. United States,* 369 U.S. at 764, 82 S.Ct. at 1047. An indictment need not plead offenses in such detail as to be self-sufficient as a bar against further prosecution for the same offense; it is the judgment that constitutes the bar.

---

1. Cf. *Conner v. Auger,* 595 F.2d 407, 410–11 (8th Cir.1979), in which the court held that a challenge to the rulings of the Iowa courts holding the indictment sufficient did not present a claim of constitutional dimension because the indictment, together with the minutes of grand jury testimony attached to it, amply informed the defendant of the specific act with which he was charged. Implicit in the court's holding is the conclusion that the petitioner had not presented a colorable due process claim.

Similarly, the first criterion is satisfied. The indictment contains the essential elements of the offense of theft by deception.

A closer question is whether the second criterion is satisfied by the present indictment. Viewing the indictment as a whole, *United States v. Stanford*, 589 F.2d 285, 295 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), we must determine whether the details of the indictment were, as a practical matter, sufficient to apprise the presumptively innocent petitioners of the charge they were required to defend. *United States ex rel. Harris v. Illinois,* 457 F.2d 191 (7th Cir.), *cert. denied,* 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106 (1972).

■ The district court concluded that the indictment provided petitioners with the information necessary to mount their defenses; it noted that none of the petitioners had requested a bill of particulars and that the record failed to reveal any difficulties in presenting a defense. Although a bill of particulars cannot save an unconstitutionally vague indictment, *Russell v. United States,* 369 U.S. at 770, 82 S.Ct. at 1050,[2] petitioners' failure to request a bill of particulars does suggest that as a practical matter, the indictment provided sufficient information to facilitate the preparation of a defense.

■ Petitioners fail to inform this court specifically how they were misled, surprised, or otherwise prejudiced at trial by the absence of specific allegations in the indictment as to the nature of the deception practiced by petitioners. Counsel's conclusory statement in their brief that they had no idea of which acts petitioners were on trial for is insufficient to demonstrate prejudice. In conclusion, we find the indictment constitutionally sufficient.

### III. *Ineffective Assistance of Counsel*

Petitioners contend that the trial court's refusal to allow attorney Spiezer to withdraw from representation of either petitioner Orris Ballard or petitioner Gaudry on the ground that a potential conflict of interests existed violated their sixth amendment right to effective assistance of counsel.[3]

■ We begin with a basic proposition: Multiple or joint representation is not a *per se* violation of the sixth amendment. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). But because there is always a potential conflict of interests when co-defendants are represented by a single lawyer, "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Cuyler v. Sullivan,* 446 U.S. at 348, 100 S.Ct. at 1718.

Petitioners argue that *Cuyler* requires a showing of an actual conflict of interests which adversely affected the lawyer's performance only when the defendants raised no objection at trial. Citing *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1977), petitioners argue that because they objected to their joint representation before and during trial, they need

---

**2.** A contrary rule would circumvent the role of the grand jury as a charging body acting independently of either the prosecuting authority or the judge. One policy underlying the requirement of specificity in an indictment is prevention of the usurpation of grand jury power by the prosecutor or judge. To allow either to make an ex post facto guess as to what was in the minds of the grand jury members at the time they returned the indictment "would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." *Russell v. United States,* 369 U.S. at 770, 82 S.Ct. at 1050. A defendant cannot be convicted on the basis of facts not found by, or perhaps even presented to, the grand jury which indicted him. Specific indictments, then, curb otherwise unfettered prosecutorial and judicial discretion.

**3.** The sixth amendment challenge to the multiple representation in this case has been filed on behalf of all co-defendants represented at trial by attorney Spiezer; the alleged conflict, however, was between the interests of Orris Ballard and Serge Gaudry. No conflict was alleged with respect to the interests of Lawrence Ballard, and Spiezer did not seek to withdraw as counsel for him. Therefore, it would appear that Lawrence Ballard's sixth amendment right to the effective assistance of counsel is not implicated.

show on federal habeas corpus only that a potential conflict of interests existed in order to establish a sixth amendment violation.[4]

■■■ We agree that this case is governed by *Holloway*, which held that in the face of a timely objection, the trial judge's failure to appoint separate counsel or to ascertain that the risk of conflict of interests was too remote to warrant separate counsel is a sixth amendment violation.[5] Attorney Spiezer's objections were sufficient to alert the trial judge to a possible conflict of interests.[6] At this point it became the duty of the trial judge to seek out the facts surrounding the alleged conflict and to determine whether counsel's continued representation of both Orris Ballard and Gaudry would be consonant with the Supreme Court's early admonition in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), that the sixth amendment guarantees a criminal defendant representation free of conflicting loyalties. *United States v. Jeffers*, 520 F.2d 1256, 1263 n. 11 (7th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).

We now turn to an examination of the propriety of the trial judge's actions in responding to the alleged conflict. *Dently v. Lane*, 665 F.2d 113, 116–17 (7th Cir.1981).

Although the *Holloway* Court recognized that an attorney's request for appointment of separate counsel, based on his representations as an officer of the court that a potential or actual conflict of interests exists, usually should be granted, it made clear that "[w]hen an untimely motion for separate counsel is made for dilatory purposes," the trial judge appropriately may deal with such tactics. *Holloway v. Arkansas*, 435 U.S. at 486–87, 98 S.Ct. at 1179–80.

The trial judge specifically found Spiezer's pretrial motion to withdraw as counsel for one of the petitioners to be a dilatory tactic. In denying the motion, the judge stated in pertinent part: "This case has been continued, continued, continued, continued. I believe these are nothing more than harassing motions to stall the trial." Petitioners argue that because they never filed a motion to continue, there was no basis in the record for the trial judge's conclusion that the motion was made for dilatory purposes. Petitioners further argue that the motion was timely, noting that the motion to withdraw in *Holloway* was made only three weeks before trial. These contentions merit considerable attention.

Petitioners were indicted in May, 1975. Attorney Spiezer began his representation

4. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333, the Supreme Court made clear that a sixth amendment claim of denial of effective assistance of retained counsel does involve state action within the meaning of the fourteenth amendment, thereby rendering federal habeas corpus available to redress the constitutional deprivation.

5. We take this opportunity to affirm the distinction, noted in *Dently v. Lane*, 665 F.2d 113 (7th Cir.1981), between *Holloway* and *Cuyler* claims of ineffective assistance of counsel. In *Holloway*, the petitioners had made a timely objection on conflict of interests grounds to the joint representation. The *Holloway* Court reserved the issue whether the trial judge must inquire *sua sponte* into the propriety of joint representation absent an objection by the defendants or their attorney. The *Cuyler* Court reached this issue, and concluded that unless the trial judge knows or reasonably should know that a particular conflict exists, he need not initiate an inquiry into the propriety of multiple representation. The *Cuyler* Court fur-

ther held that in the absence of a timely objection in the trial court and attendant opportunity to show that potential conflicts impermissibly imperil his right to a fair trial, the habeas corpus petitioner must demonstrate that an *actual* conflict of interests adversely affected his lawyer's performance. In the absence of a timely objection, this Court consistently has applied the *Cuyler* "actual conflict" test. *See, e.g., Davis v. Franzen*, 671 F.2d 1056 (7th Cir. 1982); *United States v. Medina-Herrera*, 606 F.2d 770, 776 (7th Cir.1979); *United States v. Mavrick*, 601 F.2d 921, 930 n. 10 (7th Cir.1979); *United States v. Mandell*, 525 F.2d 671 (7th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976).

6. Indeed, attorney Spiezer had an ethical obligation to bring to the attention of his clients and the court any potential conflict of interests. *See* A.B.A. Standards: The Defense Function § 3.5(b) (1971). The primary responsibility for the ascertainment and avoidance of conflicts lies with defense attorneys. *United States v. Mandell*, 525 F.2d 671, 677 (7th Cir.1975).

of petitioners when they were arraigned in September, 1975. On February 9, 1976, approximately five months after the arraignment and one week before trial was scheduled to begin, Spiezer filed a motion to withdraw as counsel for petitioner Orris Ballard, representing that he had become aware of a conflict of interests among the defendants, and that due to Ballard's lack of cooperation Spiezer did not feel that he could adequately represent him. The motion was heard and denied on February 16, 1976, the first day of trial.

We decline to view this motion as untimely. Although defense counsel has the ethical obligation to raise objections to joint representation as early as possible before the commencement of trial, it is entirely conceivable that the conflict may not become apparent until shortly before trial is scheduled to begin. To hold that counsel must file such a motion a set number of weeks before trial is to undermine not only the sixth amendment's guarantee, but also counsel's ethical obligation to disclose a conflict immediately upon its discovery.[7]

▇ Because a trial judge's failure to inquire into the circumstances of an alleged conflict upon timely objection is justified only when the prospect of dilatory practices is present, *Holloway v. Arkansas,* 435 U.S. at 487, 98 S.Ct. at 1180, a finding of such practices must be scrutinized carefully. In the present case, the trial judge's basis for his conclusion that the pretrial motion was filed for dilatory purposes is unknown. Although the trial date had been reset several times, the reasons for these delays were not articulated by the trial judge at the hearing on the motion to withdraw. It is unknown whether petitioners had requested continuances, and if so, for what reasons.

▇ In *Sumner v. Mata,* 449 U.S. 539, 547–50, 101 S.Ct. 764, 769–70, 66 L.Ed.2d 722 (1981), the Supreme Court emphasized that factual findings of state courts are presumed correct on habeas corpus. 28 U.S.C. § 2254(d) provides that "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... shall be presumed to be correct" unless the petitioner can establish one of the eight enumerated causes for exception to the presumption. *United States ex rel. Jones v. Franzen,* 676 F.2d 261, 264–65 (7th Cir.1982); *United States ex rel. Gorham v. Franzen,* 675 F.2d 932, 936 (7th Cir.1982).

One of these eight causes for exception is contained in § 2254(d)(8). State court factual findings are entitled to a presumption of correctness

> [u]nless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record ....

28 U.S.C. § 2254(d)(8) (1976).

The federal district court has an obligation to determine whether the state court findings are entitled to the presumption of correctness, *United States ex rel. Worlow v. Pate,* 437 F.2d 909 (7th Cir.1971), and federal district court review ends only upon finding fair support in the record for the state court findings. *United States ex rel. Jones v. Franzen,* 676 F.2d at 264–65.

▇ It appears that the district court in this case relied entirely upon the trial judge's evaluation of the motion as a dilatory tactic. We hold that the district court's reliance upon this disputed factual finding without an independent review of the record to determine whether it was fairly supported by the evidence was impermissible.

---

7. It has been suggested that even a later motion may be appropriate if the conflict does not become apparent before trial proceeds. "To guard against strategic disruption of the trial, however, the court may require a substantial showing of justification for such midtrial motions." *Holloway v. Arkansas,* 435 U.S. at 495 n. 4, 98 S.Ct. at 1179 n. 4 (Powell, J., dissenting).

### IV.  *Conclusion*

We affirm the district court's decision that the indictment was constitutionally sufficient.  With respect to petitioners' sixth amendment claim, we reverse the decision of the district court and remand for an evidentiary hearing on whether attorney Spiezer's motion was filed for a dilatory purpose.  If the district court properly determines that the finding of a dilatory purpose is fairly supported by the evidence, the inquiry ends there.  If the finding is not so supported, the district court must determine whether the trial judge's handling of the pretrial and midtrial motions comported with *Holloway.*  Specifically, the court must determine whether the mere prospect of dilatory tactics is sufficient to permit a summary denial of the motion such as occurred in this case.