**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis Anthony RIVERA,
Defendant–Appellant.**

**Nos. 85–1768, 85–1771.**

United States Court of Appeals,
Tenth Circuit.

Jan. 20, 1988.

Louis Vernell, North Miami Beach, Fla. (Gregory Meier, Muskogee, Okl., on the brief of defendant-appellant, and Louis Vernell on the supplemental brief), for defendant-appellant.

Gene V. Primomo, Asst. U.S. Atty. (Roger Hilfiger, U.S. Atty., E.D. Okl., with him on the brief), Muskogee, Okl., for plaintiff-appellee.

Before McKAY and MOORE, Circuit Judges, and BROWN, District Judge [*].

McKAY, Circuit Judge.

Luis Anthony Rivera was found guilty of all counts under both a seven-count indictment (indictment I) and a six-count indictment (indictment II) in a consolidated trial. He was sentenced to the maximum term allowable under every count with each to run consecutively, resulting in a life sentence without parole plus 140 years.

Indictment I charged defendant and six other named individuals, with: (1) conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a), 960, and 963 (1982 & Supp. III 1985); (2) importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960 (1982 & Supp. III 1985); (3) conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982); (4) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982); (5) conspiracy to travel

[*] Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

in interstate and foreign commerce with the intent to import and possess with the further intent to distribute cocaine in violation of 18 U.S.C. §§ 371 and 1952(a)(3) (1982); (6) traveling in interstate and foreign commerce with intent to import and possess with the further intent to distribute cocaine in violation of 18 U.S.C. § 1952(a)(3) (1982); and (7) engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 (1982 & Supp. III 1985). *See* Indictment, record, vol. 1, at 1–12.

The acts described in indictment I allegedly occurred between January 1, 1983, and July 1, 1983, culminating in 460 pounds of cocaine being smuggled from Columbia to an isolated airstrip in Talihina, Oklahoma, on the latter date. The defendants had allegedly arranged to hide the narcotics in secret compartments in various horse trailers and pickup trucks for transport to Miami, Florida, for further distribution across the country. The plan was interrupted with the arrest of several of the defendants and seizure of the cocaine shortly after it was transferred from the aircraft to a pickup truck in twenty-four green duffel bags. Mr. Rivera was arrested approximately eighteen months later.

The indictment detailed Mr. Rivera's recruiting activities in finding someone both to locate an appropriate airstrip and to arrange transport of the cocaine to Miami. It described the purchases of the Cessna aircraft and two pickup trucks used to transport the cocaine and recounted the travels of the various participants under assumed names in the days before July 1, 1983. All actions and facts alleged in the indictment were directly related to the July 1, 1983, transaction.

The six counts in indictment II were identical to the first six counts in indictment I, but they related to actions allegedly occurring between May 1, 1982, and July 12, 1982. There was no CCE count. The indictment only charged defendant and Alan Ronald Kaye, although it named two unindicted co-conspirators who were indicted in indictment I. The smuggling operation described was similar to that in indictment I,

allegedly resulting in the successful importation of approximately 400 pounds of cocaine into Talihina on July 12, 1982, which were then transported to Florida. *See* indictment, record, vol. 2, at 1–7. All of the alleged actions and facts in indictment II directly pertained to the July 12, 1982, operation.

## I.

Mr. Rivera contends that the trial court erred in admitting evidence of two substantial drug offenses not charged in either indictment. The first transaction occurred in May of 1983 when the defendant contacted Cecil Ford, an indicted co-conspirator under indictment I, and instructed him to travel from Florida to the Denver Airport to deliver five kilos of cocaine. Mr. Ford was paid $5,000.00 for the job. The second transaction occurred approximately one week prior to the July 1983 importation charged in indictment I. The defendant instructed William Sebolt and Rogers Ariza, also indicted co-conspirators under indictment I, to travel from Oklahoma to Milwaukee, Wisconsin, in order to pick up cocaine from a parked aircraft. They did so, placing the cocaine in a hidden compartment in a truck provided by Mr. Rivera, and transported the cargo to Florida. Upon delivering the cocaine to the defendant, Messrs. Ariza and Sebolt received cash payments of $10,000.00 and $5,000.00, respectively. Each of the three coconspirators testified at length to these events, and the prosecutor cited them in both his opening statement and closing argument. *See* record, supp. vol. 2, at 126–27; supp. vol. 4, at 479–87; supp. vol. 5, at 686–96, 751–55; supp. vol. 7, at 1,222–24.

Defendant's counsel apparently learned of this line of evidence from the prosecution shortly before trial and at the beginning of the trial moved to exclude evidence of these uncharged offenses. *See id.*, supp. vol. 2, at 97–106. The prosecutor freely admitted that "the reason that [these offenses were] not in the indictment is at the time the indictment was drafted *we did not know that." Id.* at 99 (emphasis added). The record clearly shows that

this evidence was not presented to the grand jury that returned the indictment.

The prosecution offered three grounds supporting admissibility of this evidence: (1) that it was direct support indicating Mr. Rivera was a supervisor or manager within the meaning of the CCE statute, *id.* at 98; (2) that it showed "agreements and plans and whatnot" in general support of the CCE charge, *id.* at 100; and (3) that it was circumstantial evidence showing "four or five things, one of which is absence of mistake, motive, intent, identity, I forget what all, there are four or five" and was thus admissible under Fed.R.Evid. 404(b).[1] *Id.* at 103.

In response to the prosecution's assertion that such evidence is admissible "mainly under the continuing criminal enterprise," *id.* at 100, defendant's counsel argued that the CCE count of the indictment "specifically allege[d] that Mr. Rivera caused the importation of cocaine in the United States and caused the possession of cocaine with intent to distribute *as alleged in Counts Two and Four of this indictment." Id.* at 101 (emphasis added). As noted, counts two and four, indeed the entire indictment, discussed only facts regarding preparation for and execution of the July 1983 Oklahoma importation.[2] Defense counsel submitted that

> if these particular serious offenses, transporting cocaine up to Wisconsin, transporting cocaine to Colorado, if those are to be part of this indictment and a

part of this case, I think the law is that they have to take that matter back to the grand jury, because it's a substantial variance from what they have alleged that they're going to prove to prove [sic] this count.

*Id.* at 102–03. Furthermore, with respect to the Rule 404(b) ground, defense counsel argued that none of the 404(b) elements was at issue in this case. *See id.* at 104.

In ruling the evidence admissible, the trial court stated, "In my opinion it's relevant and closely connected, and I think it fits under the conspiracy as an overt act, if nothing else, but certainly under Rule 404(b)." *Id.* at 105. The court also overruled defendant's motion for a mistrial on these grounds after the prosecutor's opening statement. *Id.* at 137. Each of his ensuing objections were similarly overruled, but the court cited only Rule 404(b) grounds on each subsequent occasion. *See* record, supp. vol. 4, at 480–81; supp. vol. 5, at 688–90, 751.

"Various circuit courts have admitted into evidence proof of other illegal controlled substance activities in a trial dealing with illegal controlled substance charges, as establishing various elements of the crime." *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.) (citations omitted), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). Nevertheless, "[t]he use of other crimes evidence is not looked on favorably and its use must be narrowly circumscribed and limited." *United States*

---

1. Rule 404(b) provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

 Even if admissible as a threshold matter under Rule 404(b), other crimes or wrongs evidence must be excluded if its prejudicial tendencies outweigh its probative value under Fed.R. Evid. 403. *See United States v. Kendall,* 766 F.2d 1426, 1436–37 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).

2. Even the prosecutor, who had argued to the judge that the Denver and Milwaukee deliveries

were closely connected to the Oklahoma importation, stated before the jury that the Denver trip "didn't have anything to do with the July importation of cocaine...."

Record, supp. vol. 4, at 550–51.

This evidence was not, as the Government argues on appeal, so "inextricably intertwined" with the evidence used to prove the charged July importation that it was intrinsic to that crime and thus admissible *independent of* Rule 404(b). *See United States v. McCrary,* 699 F.2d 1308, 1311 (11th Cir.1983) (evidence of dealing in marijuana and quaaludes on occasions other than those charged in indictment admissible independent of Rule 404(b) in trial for distributing methaqualone because "inextricably intertwined with the evidence used to prove the crime charged").

*v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.1986). In this circuit,

> the Government bears the burden of showing how the proffered evidence is relevant to one or more issues in the case.... The *Government must articulate precisely* the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the *trial court must specifically identify* the purpose for which such evidence is offered and a *broad statement merely invoking or restating Rule 404(b) will not suffice.* A specific articulation of the relevant purpose and specific inferences to be drawn from each proffer of evidence of other acts will enable the trial court to more accurately make an informed decision and weigh the probative value of such evidence against the risks of prejudice specified in Rule 403. This requirement is an attempt to ensure that a decision to admit or exclude be made only after issues and reasons are exposed and clearly stated. In addition, specific and clear reasoning and findings in the trial record will greatly aid an appellate court in its review of these evidentiary issues.

*United States v. Kendall*, 766 F.2d 1426, 1436–37 (10th Cir.1985) (emphasis added) (citations omitted), *cert. denied*, 106 S.Ct. 848, 474 U.S. 1081, 88 L.Ed.2d 889 (1986).

■ Furthermore, in order for evidence to be admissible under Rule 404(b), "[t]he element of the prior crime for which there is a recognized exception to the general rule, such as intent, must be a material issue in the instant case; [and there] must be a substantial need for the probative value of the evidence provided for by the prior crimes." *United States v. Rice*, 550 F.2d 1364, 1372 (5th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 478, 54 L.Ed.2d 312 (1977); *see also United States v. Brunson*, 549 F.2d 348, 359 (5th Cir.), *cert. denied*, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977). If none of the elements listed in Rule 404(b) is at issue in a given case, evidence of other acts could only go toward proving the character of a person in order to show that he acted in conformity therewith—a prohibited use of such evidence under Rule 404(b). *See supra* note 1. The danger that the jury would impermissibly use such evidence as character evidence increases as the likelihood that there is any issue regarding the Rule 404(b) elements decreases. The *Kendall* requirements help minimize that danger by forcing the Government and the court to precisely articulate the legitimate need for the evidence in a given case.

■ The Government in this case failed to satisfy its burden of articulating precisely its 404(b) analysis. The trial court likewise failed to identify the specific purpose for which the evidence was admitted. Neither the prosecutor nor the court specifically identified which, if any, of the 404(b) elements were disputed in this case, and only if an element is disputed is other acts evidence permitted to aid the jury in resolving the issue. *See United States v. Merryman*, 630 F.2d 780, 786 (10th Cir.1980) (prior acts evidence circumstantially establishing knowledge "answered a specific requirement" because knowledge was "a vital issue" in the case). Here, however, both the Government and the court made "broad statement[s] merely invoking or restating Rule 404(b)" which, as *Kendall* states, "will not suffice." In short, they took the "laundry list" approach.[3]

---

3. A few quotations from the record illustrate the total lack of specificity in this case with respect to the Rule 404(b) argument.

> THE COURT: 404(b), which one? Which one of those exceptions?
> MR. BAKER: All of them.
> THE COURT: Name them.
> MR. BAKER: Your Honor, it would go to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. I mean, it's the same thing, it's dealing in cocaine.
> ....

> THE COURT: I'll overrule your objection. Now, under 404(b) I find it more probative than prejudicial because of all of those reasons.
> Record, supp. vol. 4, at 481.
> MR. BAKER: Then I think that it's, under Rule 404(b), that it goes to show that it's part of a common scheme to import cocaine and to transport the cocaine, that it goes to show that it wasn't an absence of mistake on Mr. Rivera's part, it goes to show that all the

If the Government need only parrot the list of elements in Rule 404(b), as it did in this case, without affirmatively demonstrating that one of those elements is actually in dispute and without affirmatively demonstrating the nexus of the other acts evidence to the resolution of the disputed issue, the general bar of other acts evidence would be rendered illusory. Other acts evidence of similar crimes would always be admissible once the Government recited its "laundry list." The record in this case illustrates precisely why we impose the burdens outlined in *Kendall* when admitting other acts evidence under Rule 404(b). That rule is not to be used as an excuse or a smokescreen to get other acts evidence before the jury when the Government cannot show that it is necessary to resolve a material issue in dispute.

■ Of even greater significance in this case than the failure to satisfy the *Kendall* requirements was the court's failure to limit the use of such evidence to those purposes listed in Rule 404(b). If evidence is admitted solely under the authority of Rule 404(b), the court must give a limiting instruction both at the time the evidence is admitted and in the general charge to minimize the danger that the jury might use the evidence as proof that the defendant acted in conformity with his past acts on the occasion for which he is being tried. *See United States v. Brown,* 770 F.2d 912, 914 (10th Cir.1985) (jury instructed that other acts evidence "not to be considered

as proof of the offense at trial, but for the limited purpose of determining motive, intent, knowledge, absence of mistake"), *rev'd on other grounds,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Merryman,* 630 F.2d at 786 (quoting and stressing importance of limiting instruction with respect to Rule 404(b) evidence); *United States v. Herbst,* 565 F.2d 638, 642 (10th Cir.1977) (quoting lengthy limiting instruction).

■ In this case, the court instructed the jury as follows: "Evidence concerning offenses and conduct by the defendant other than the offenses charged in the indictment has been admitted for the limited purposes of establishing intent, motive, knowledge, plan, absence of mistake, accident, or *continuing criminal enterprise.* You will consider that evidence only for those purposes." Record, supp. vol. 7, at 1244–45 (emphasis added). The possibility thus created was not the usual danger that the jury would use the other acts evidence as character evidence but instead that the jury would use the evidence to satisfy one or more of the elements of the continuing criminal enterprise count. Rather than limiting the jury to viewing the evidence of prior acts only as *circumstantial* evidence of defendant's intent, motive, etc., on the occasion for which he was tried, the court allowed the jury to use the evidence as *direct* evidence of the crime of continuing criminal enterprise.[4] Because that evi-

---

things listed in 404(b) that the Court previously ruled on.

THE COURT: Which are?

MR. BAKER: That is should be admissible for all purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

THE COURT: You ask him when it was. If it was about that time, I think it's close enough to show motive, opportunity, intent, absence of mistake, and all the other matters pointed out, and I will overrule your objection.

MR. HAYES: Okay.

THE COURT: Show I believe it's more probative than prejudicial.

*Id.,* supp. vol. 5, at 689–90.

THE COURT: You again ask that there be an exception under 404(b)?

MR. BAKER: Yes, sir.

THE COURT: Overruled. I find that it's proof of motive, intent, opportunity, all the other matters, as a matter of fact, contained in 404(b), and it's more probative than prejudicial.

*Id.* at 751.

4. The prosecutor's closing argument increased the likelihood that the jury used the evidence of the Denver and Milwaukee trips as substantive evidence supporting the continuing criminal enterprise count.

Continuing criminal enterprise? What about when they went to Denver, what about when they went to Milwaukee, what about July of '82? He's only charged in '83, in the July. There he is charged with a continuing criminal enterprise. Well, if that isn't a continuing criminal enterprise, he did it in '82, he tried to do it in April of '83, he takes a little

dence was not properly admitted under the authority of Rule 404(b), we must examine whether such substantive use of the other acts evidence was proper under the circumstances of this case.

■ The trial court correctly instructed the jury that five essential elements comprise the crime of engaging in a continuing criminal enterprise.[5]

> First: That the defendant committed the alleged offenses as charged in Counts Two and Four of the indictment in Case Number 83–96–CR, or either of these offenses; and
>
> Second: That the violation of either of these offenses committed by the defendant was part of a continuing series of violations by him of the federal narcotics laws; and
>
> Third: That the defendant undertook to commit such series of offenses in concert with five or more persons; and
>
> Fourth: That the defendant occupied a position of organizer or supervisor or other position of management with respect to such five or more persons in said undertaking; and
>
> Fifth: That the defendant obtained substantial income or resources from said continuing series of violations.

*Id.* at 1240–41. The prosecutor's closing argument cites the Denver and Milwaukee trips as proof of element two, the continuing-series-of-violations element. *See supra* note 4.

■ Mr. Rivera argues that because the only facts alleged in the indictment as supporting the continuing criminal enterprise count related to the July importation in Counts Two and Four, evidence of the Den-

ver and Milwaukee trips constitute a prejudicial variance from the indictment. Both at trial and on appeal, Mr. Rivera quotes language from *United States v. Johnson,* 575 F.2d 1347 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979): " 'If an indictment alleges particular facts as constituting an element of a charged crime, there is a variance if the trial judge admits evidence that make out this element in a different manner.' " *Id.* at 1356 (quoting *United States v. Lambert,* 501 F.2d 943, 947 (5th Cir.1974) (en banc)).

Mr. Rivera's assertion reveals that he misreads the indictment. In pertinent part, the indictment states:

> From on or about January 1, 1983, to on or about July 1, 1983, in the Eastern District of Oklahoma, and elsewhere, LUIS ANTHONY RIVERA and MITCHELL SKIFF ENGELHART, defendants herein, knowingly and willfully violated Title 21, United States Code, Section 952, 960 and 841, by doing and causing the importation of cocaine into the United States from Columbia, South America, and by doing and causing the possession of cocaine with intent to distribute and the distribution of cocaine, as alleged in Counts II and IV of this Indictment, which are incorporated herein by reference, which violations were a part of the continuing series of violations undertaken by defendants LUIS ANTHONY RIVERA and MITCHELL SKIFF ENGELHART in concert with at least five other persons with respect to whom defendants LUIS ANTHONY RIVERA and MITCHELL SKIFF ENGELHART, and each of them, occupied a position of organizer, a supervisory position, and other

---

load, or sees that it's taken up here to Denver. Because, you see, once this old stuff gets in here, he can't just set it in Miami. We've got to take it, distribute it. And, so, they take it to Denver. And, so, they take it to Milwaukee. And who is there?
Record, supp. vol. 7, at 1222–23.

**5.** The statute provides that
> a person is engaged in a continuing criminal enterprise if—
> (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

> (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
> (B) from which such person obtains substantial income or resources.
> 21 U.S.C. § 848(b) (1982).

positions of management, and from which defendants LOUIS ANTHONY RIVERA and MITCHELL SKIFF ENGELHART and each of them, obtained and utilized substantial income and resources.

Record, vol. 1, at 11–12. A careful reading of this language indicates that the facts alleged in Counts Two and Four are alleged in the CCE count as satisfying element one of the CCE count, the commission of a felony narcotic offense. They are not cited as supporting element two, the continuing-series-of-violations element.[6] *No* particular facts are alleged in the indictment as supporting element two. Thus, *Johnson* is inapplicable because the prerequisite for application of the rule—allegation of particular facts as constituting an element of the charged offense—is not satisfied.

Our inquiry does not end here, however. The real problem experienced by Mr. Rivera, although not carefully articulated as such, was his complete lack of notice that these uncharged offenses would be used to prove the continuing-series-of violations element of the CCE charge. Although the indictment does allege facts supporting the first element of the CCE charge, it merely tracks the statutory language without alleging any supporting facts with respect to elements two through five. At the heart of this case, then, is whether evidence of uncharged offenses may be admitted as substantive evidence of the continuing-series-of-violations element of a CCE charge when the indictment fails to give notice of that proof and when the defendant does not have actual notice that the prosecution planned to use such proof.

After reviewing the body of cases dealing with a CCE charge, we realized why this issue has never been squarely addressed before. Typically, the continuing-series element is proven by the multiple offenses charged in the same indictment as well as by prior narcotic convictions.[7] This is a natural result of the circumstances commonly surrounding the prosecutor's decision to bring a CCE charge. As an indictment becomes lengthier and lengthier with drug offenses, the likelihood of adding a CCE charge increases, based on the very charges contained in the same indictment. The proof at trial supporting the CCE charge encompasses much of the same proof supporting the other substantive drug offenses in the indictment. *See, e.g., United States v. Jones,* 621 F.Supp. 383, 385 (E.D.Ark.1985) (indictment charged CCE "by committing the offenses set forth in the Indictment and the Overt Acts in Count Two"), *aff'd,* 801 F.2d 304 (8th Cir. 1986). Rarely would an indictment contain solely a CCE charge or a CCE charge with only one or two other substantive offenses. Indeed, we were not able to find such a case in the reported appellate decisions.

There have been general challenges on vagueness grounds to the sufficiency of CCE indictments that simply paraphrased the statutory terminology, but all such challenges have failed. *See United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 399,

---

**6.** In fact, if the indictment charged that the continuing-series element depended only on proof of the crimes charged in Counts Two and Four, as Mr. Rivera implies, the indictment would automatically fail. Several circuits have concluded that the continuing-series element requires proof of at least three narcotic violations. *See United States v. Ricks,* 776 F.2d 455, 463 n. 13 (4th Cir.1985) (listing cases), *cert. denied,* —— U.S. ——, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986). Although not squarely analyzing the issue, the Supreme Court implicitly concurred in this conclusion in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), by assuming that "three predicate offenses ... must be shown to make out a CCE violation." *Id.* at 775, 105 S.Ct. at 2410.

**7.** We do not, however, mean to imply that only proof of convictions satisfies the continuing series element. The precise statutory language is "continuing series of *violations.*" 21 U.S.C. § 848(b)(2) (emphasis added). If the prosecution proves an uncharged offense beyond a reasonable doubt, such offense may constitute one of the three requisite offenses sustaining a CCE charge. *See United States v. Markowski,* 772 F.2d 358, 361 (7th Cir.1985), *cert. denied,* 475 U.S. 1218, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986); *United States v. Young,* 745 F.2d 733, 747 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Lurz,* 666 F.2d 69, 78 (4th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874, 457 U.S. 1136, 102 S.Ct. 2966, 73 L.Ed.2d 1354, 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982).

93 L.Ed.2d 353 (1986); *United States v. Lurz*, 666 F.2d 69, 78 (4th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874, 457 U.S. 1136, 102 S.Ct. 2966, 73 L.Ed.2d 1354, 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982); *Johnson*, 575 F.2d at 1356; *United States v. Sperling*, 506 F.2d 1323, 1344 (2d Cir.1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975). In each of those cases, however, the offenses charged in the same indictment or prior drug convictions appear to be the proof used to satisfy the continuing-series element.

In *United States v. Young*, 745 F.2d 733 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985), the defendant evidently argued that the indictment was insufficient on its face because evidence of other crimes not charged in the indictment was used to establish the continuing-series element of a CCE charge. *See id.* at 752–53. However, the Second Circuit did not need to reach the issue, for the defendant "*conceded* (but only for purposes of his appeal. . . .) that in order to support a § 848 charge, the government is not required to plead in any form, much less obtain convictions on, any of the eligible predicate offenses, but may instead simply prove at trial the continuing series of offenses." *Id.* at 747 (emphasis added). A full reading of the case suggests that the facts underlying the uncharged offenses used to establish the continuing-series element were alleged as overt acts in the indictment so that the defendant had notice of this evidence. While this fact is not unequivocally clear, the defendant did *not* claim surprise. Rather, his argument was technically drawn, focusing narrowly on the failure of the CCE count itself to list the offenses proven.

The Ninth Circuit has summarily held that "there is no legal requirement that the violations which make up the continuing series be specifically listed in the indictment." *United States v. Sterling*, 742 F.2d 521, 526 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985). The court has not, however, addressed whether the defendant is entitled to any notice of such evidence, such as through a bill of particulars, if it is not alleged in the other counts of the indictment.

The most pertinent and instructive circuit decision with respect to the present inquiry is *United States v. Becton*, 751 F.2d 250 (8th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985), in which the defendant mounted a general challenge to the indictment on appeal because of its failure to specify the underlying felonies constituting the continuing-series element. Although the court ruled against the defendant, it did not do so on the ground specified in *Amend, Lurz, Johnson*, and *Sperling*—that an indictment tracking the statutory language is sufficient. Instead, the court recognized that

[a]s a general rule, due process requires that the indictment give a defendant notice of each element of the charge against him so that he can prepare an adequate defense. However, if the defendant has actual notice of the charges, due process may be satisfied despite an inadequate indictment. In this case, other counts of the indictment gave Becton notice of the underlying felonies. . . . Significantly, Becton fails to allege that any of the felonious activities proved at trial took him by surprise. Furthermore, he did not raise this objection to the indictment before or during trial, and on appeal he raised it for the first time in his reply brief. These facts lead us to conclude that the government's failure to specify underlying felonies in [the CCE count] of the indictment did not prejudice Becton in any way.

. . . .

We do not, by this opinion, necessarily approve of the government's handling of the indictment in this case. We think it would be far preferable to list the felonies comprising the criminal enterprise in the CCE count of an indictment, thereby eliminating the potential problems suggested by Becton. However, we conclude on the facts in this case, that Becton received adequate notice of the

charges against him and had an opportunity to present an adequate defense. *Id.* at 256–57 (citations omitted). Thus, *Becton* was a more factually typical case in which the three offenses satisfying the continuing-series element were alleged in the other substantive counts of the indictment. The language implies that had the three offenses proved at trial been uncharged offenses of which the defendant had no prior notice, the outcome may have been different. The defendant's *actual* notice of the charges and lack of surprise were the persuasive factors for the court. Such is the extent of the prior case law with which we approach the issue before us.

■■■ Two concerns bring us to the conclusion that the decision in this case must be reversed. The first is grounded in the sixth amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the *nature and cause* of the accusation...." U.S. Const. amend. VI (emphasis added). Further support is found in the due process notion that fundamental fairness requires basic notice of the events for which a defendant must answer in court. *See Becton,* 751 F.2d at 256. These guarantees underlie the Fed.R.Crim.P. 7(c)(1) provision that an indictment must contain a "plain, concise and definite written statement *of the essential facts constituting the offense charged.*" (Emphasis added). Mere technical deficiencies in an indictment of no prejudice to the defendant do not result in the abridgement of sixth amendment and due process rights. *Cf.* Fed.R. Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect sub-

stantial rights shall be disregarded.") Prejudice does arise, however, if either an indictment fails to sufficiently apprise a defendant "of what he must be prepared to meet" or if the defendant would not be "fully protected from again being put in jeopardy for the same offense." *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962).[8] While we are not convinced on the indictment and record before us that Mr. Rivera would be able to plead double jeopardy if subsequently charged with offenses relating to the Denver and Milwaukee incidents, we need not resolve that issue. *Russell* makes clear that the sufficient-notice prong is separate from the double-jeopardy prong, *see id.* at 764, 82 S.Ct. at 1047, and failure under either prong requires reversal. *See United States v. Lambert,* 501 F.2d 943, 948 n. 7 (5th Cir.1974). The sufficient-notice prong was not satisfied in this case.

■■■ The continuing-series-of-violations element charged in the indictment merely tracked the statutory language.

" 'It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." ' *United States v. Cruikshank,* 92 U.S. [2 Otto] 542, 558 [23 L.Ed. 588].... 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of

---

**8.** Many of the cases discussing these principles involve an issue of variance from the indictment; that is, the indictment does recite supporting facts, but the crime charged is proven at trial with facts different from those alleged. *See United States v. Somers,* 496 F.2d 723, 743–44 (3d Cir.) (reviewing history of law regarding variances from the indictment and amendments to the indictment), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). The present case deals not with a variance of proof at trial from that alleged in the indictment but rather a failure to allege in the indictment any of the facts proved at trial. We are justified in borrowing from these variance cases, however, for the un-

derlying concern for adequate notice of the nature of the proof is the same in both instances. Indeed, the posture of the *Russell* case is more closely analogous to the present facts than to the multitude of variance cases that cite it. *Russell* dealt with the failure of an indictment to aver the subject under inquiry of the House Committee on Un–American Activities when the crime charged was failure to respond to a question "pertinent to the question then under inquiry." *Russell,* 369 U.S. at 752, 82 S.Ct. at 1041. *See also infra* note 10 (arguing that the case before us could be interpreted as a variance case).

*the facts and circumstances* as will inform the accused of the specific offence, coming under the general description, with which he is charged.' *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516."

*Russell,* 369 U.S. at 765, 82 S.Ct. at 1047–48 (emphasis added). Narcotics "violations," three of which must be proven to satisfy the continuingseries element, *see supra* note 6, is just such a generic term that must be supported by a statement of the surrounding circumstances. *See generally United States v. Salazar,* 720 F.2d 1482, 1486 (10th Cir.1983) (indictment must contain elements of offense *and* sufficiently apprise defendant of what he must be prepared to meet), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Boston,* 718 F.2d 1511, 1515 (10th Cir.1983) (indictment must inform accused of nature of crime charged *and its basis* so that he may prepare his defense), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984); *United States v. Elliott,* 689 F.2d 178, 180 (10th Cir.1982) (indictment should lay out elements of charge *and factual circumstances* underlying them); *United States v. Morris,* 623 F.2d 145, 149 (10th Cir.) (prejudicial variance occurs when accused could not have anticipated from the indictment what *evidence* would be presented at trial), *cert. denied,* 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980); *United States v. Begnaud,* 783 F.2d 144, 148 (8th Cir.1986) (primary consideration in determining prejudice is whether indictment fully and fairly apprises defendant of charges he or she must meet; held—defendant sufficiently apprised of *proof* that prosecution ultimately presented); *United States ex rel Ballard v. Bengston,* 702 F.2d 656, 660 (7t Cir.1983) (indictment that does not inform defendant with reasonable certainty of nature of charge against him is defective even though it tracks language of pertinent statute); *United States v. Horton,* 676 F.2d 1165, 1169 (7th Cir.1982) (mere tracking of statutory language is insufficient when additional information is necessary to provide accused with clear understanding of specific charges against him), *cert. de-*

*nied,* 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983); *United States v. Conlon,* 628 F.2d 150, 155 (D.C.Cir.1980) (indictment may track language of statute itself if statute directly and unambiguously sets forth all elements of offense, but more general rule is that statutory language must be *supplemented* with enough detail to alert accused of particular offense with which he is charged). The CCE statute has been the subject of attack on "void-for-vagueness" grounds in several circuits. *See, e.g., United States v. Dickey,* 736 F.2d 571, 588 n. 7 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *Johnson,* 575 F.2d at 1357; *Sperling,* 506 F.2d at 1343. Although the statute has withstood all such attacks, these repeated challenges nevertheless indicate enough vagueness in the statute that an indictment merely repeating its language without alleging any supporting proof is rendered questionable.

When the indictment charging a continuing criminal enterprise fails to sufficiently specify the breadth of the criminal transactions the defendant must meet, the defendant suffers several harms. He cannot adequately prepare his defense, and the prosecution gains an unfair advantage in being "free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell,* 369 U.S. at 768, 82 S.Ct. at 1049. If the trial court prohibits evidence of a specific offense, the prosecutor can simply admit evidence of a different offense of which defendant had no prior notice. The prosecutor would not be required to decide ahead of time which uncharged offenses, if any, he or she planned to prove at trial.

Moreover, another object of an indictment is

to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the

indictment, with reasonable particularity of time, place and circumstances.

*United States v. Cruikshank,* 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588 (1876). *See Russell,* 369 U.S. at 768 n. 15, 82 S.Ct. at 1049 n. 15 ("principle enunciated in *Cruikshank* retains undiminished vitality"). The present indictment, in light of the proof offered, thereby vitiated yet another purpose for the requirement of some specificity in an indictment.

■ Finally, such an indictment "enables [the defendant's] conviction to rest on one point and the affirmance of the conviction to rest on another." *Id.* at 766, 82 S.Ct. at 1048. In finding that the continuing-series element is satisfied, the jury may rely on three particular offenses. If the appellate court rules that one of those offenses could not properly be considered, it is free to search the record for another offense to take its place. If the offense is an uncharged one, the jury may never have reached a conclusion whether or not this replacement offense was proved beyond a reasonable doubt. These problems are compounded when, as in this case, the jury returns a general verdict and is not required to answer interrogatories regarding which three offenses satisfied the continuing-series element.

■ The second concern prompting our decision is rooted in the fifth amendment's guarantee that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. amend. V. The crime of engaging in a continuing criminal enterprise carries a possible life sentence without parole and is certainly an "infamous crime" to which the right to indictment by grand jury attaches. *See Duke v. United States,* 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243 (1937).

The indictment serves "as a link between the grand jury's considerations and the prosecutor's case at trial." *United States v. Piccolo,* 696 F.2d 1162, 1166–67 (6th Cir.), *vacated on other grounds,* 705 F.2d 800 (1983). It serves as a check on the prosecutor, designed to prevent him or her "from modifying the theory *and evidence* upon which the indictment is based." *United States v. Silverman,* 430 F.2d 106, 110 (2d Cir.1970) (emphasis added), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971).

■ The critical importance we attach to this fifth amendment right is reflected in the rule that an amendment to an indictment by the court or through jury instructions is *per se* fatal. *See Russell,* 369 U.S. at 770, 82 S.Ct. at 1050; *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).[9] In *United States v. Weiss,* 752 F.2d 777 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985), the defendant claimed that the government's theory and proof at trial "radically departed" from the indictment and thus constituted a constructive amendment to the indictment. In dismissing his claim, the court found it critical that the proof at trial "was virtually identical to the proof that was before the grand jury." *Id.* at 788. While we do not decide that the present facts entail an amendment —the defendant was charged with CCE by the grand jury and convicted of that same crime—the record reveals that evidence pertaining to the Denver and Milwaukee incidents was never submitted to the grand jury. *See* record, supp. vol. 4, at 529, 531; supp. vol. 5, at 722–23, 734–35, 768. Apparently, the indicted co-conspirators who testified to this evidence during Mr. Rivera's trial had not revealed these incidents at the time of their grand jury testimony. As noted, the prosecutor admitted that he

---

9. An amendment to an indictment must be distinguished from a variance.

An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, ... [while a] *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the in-

dictment. While variances are subject to the harmless error rule and require a showing of prejudice to the defendant, constructive amendments are generally considered prejudicial *per se. United States v. Weiss,* 752 F.2d 777, 787 (2d Cir.) (citations omitted), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985).

was unaware of these incidents when the grand jury returned the indictment against Mr. Rivera. Thus, the fear articulated by the *Russell* court, and echoed in this circuit, may have been realized in this case: "a defendant could then be convicted on the basis of facts not found by, *and perhaps not even presented to,* the grand jury which indicted him." *Russell,* 369 U.S. at 770, 82 S.Ct. at 1050 (emphasis added); *see also United States v. Neal,* 692 F.2d 1296, 1302 n. 5 (10th Cir.1982) (requirements on content of indictments enforced so as to avoid conviction on facts not found by, or perhaps not even presented to, grand jury that indicted defendant); *United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.) (same), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976); *United States v. Keith,* 605 F.2d 462, 464 (9th Cir.1979) (same).

At this point, we need to clarify the precise contours of our holding. We do not here hold that the prosecutor may never use uncharged offenses in proving the continuing-series element of a CCE charge. Neither do we hold that an indictment must always allege in the CCE count the three offenses that comprise the continuing-series element, although, like the Eighth Circuit, "[w]e think it would be far preferable to list the felonies comprising the criminal enterprise in the CCE count of an indictment, thereby eliminating [any] potential problems...." *Becton,* 751 F.2d at 257.

 If the prosecutor uses only the other crimes charged in the indictment as supporting the continuing-series element, as apparently is conventional, the defend-

ant has adequate notice of the prosecutor's proof. There is no surprise at trial, even if the CCE charge merely alleges, as in this case, a "continuing series of violations." The defendant has actual notice of the underlying proof because of its recitation in parts of the indictment covering the predicate offenses. Thus, no sixth amendment or due process problems arise. Because the evidence recited in other parts of the indictment was presented to the grand jury, no fifth amendment problem is presented. An indictment that does not elaborate in the CCE count itself the three offenses supporting the continuing-series element is therefore not fatally deficient *per se* if the proof presented at trial corresponds to the proof alleged in the other counts of the indictment.[10] There simply is no prejudice.

 What we *do* hold is that if the prosecutor plans to use offenses not separately charged in the same indictment, he or she must present those particular facts to the grand jury, thus satisfying fifth amendment concerns, and must aver those facts in the indictment so as to satisfy sixth amendment and due process notice requirements.[11] In the case of uncharged offenses, the words of the CCE statute alone are not sufficient to put the defendant on notice of the criminal transactions he must be prepared to meet. If the continuing-series element is not further defined in the indictment beyond the statutory language, the defendant may presume that the proof of the continuing-series element will be that proof alleged in the other counts of

---

**10.** For this reason, we cannot reasonably expect a motion under Fed.R.Crim.P. 12(b)(2) alleging a defect in the indictment to have been entered prior to trial. A defense attorney in a case like the present has no reason to suspect that the prosecutor will vary from the typical paradigm of proving the continuing-series element with the evidence supporting the other counts in the indictment and recited in those counts. There is no grievance before trial—or indeed *at* trial as long as the prosecution limits itself to evidence in the indictment and prior convictions. The problem here was not a defective indictment in any event but rather the inappropriate admission of evidence *in light of* the indictment. Mr. Rivera would have no basis to complain about the present indictment and a conviction

based upon it if surprise and prejudicial evidence of the Milwaukee and Colorado trips had not been used to support the CCE charge. If the prosecutor had relied only on the evidence recited in the other counts in the indictment to support the continuing-series element, as is typical, we would have no reason to question the indictment.

**11.** We view this requirement akin to inclusion of the overt acts relied upon by a grand jury to support a charge of conspiracy. *See United States v. Watson,* 594 F.2d 1330, 1341 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

the indictment.[12] The defendant in this case apparently presumed such. If, however, the Government then attempts to admit evidence of uncharged felony violations of which defendant had no notice and which was not submitted to the grand jury as the supporting evidence for the continuing-series element, the trial court should disallow the evidence. The defendant is constitutionally entitled to at least basic notice of what proof supports the elements charged.

■ We emphasize our holding is limited only to the government's attempt to use evidence of a complete criminal transaction. We do not proscribe appropriate Rule 404(b) evidence which may be incriminating but is not sufficient itself to support a charge of a substantive offense. Yet, a defendant simply cannot be left to deal with unexpected evidence of criminal conduct not considered by the grand jury to support a charge of a continuing criminal enterprise. Evidence of completed criminal transactions upon which the government relies for proof of the substantive CCE charge must be either set out with particularity in the indictment or otherwise disclosed to the defendant sufficiently in advance of trial to allow him the opportunity to prepare a meaningful defense before it is admissible. The burden for these disclosures falls upon the government.

## II.

Mr. Rivera also appeals the trial court's failure to grant a continuance for the trial when appointed counsel was supplemented by retained counsel seven days before trial. In addition, he alleges that ineffective assistance of appointed counsel requires reversal. As these issues are intertwined in this case, we deal with them together.

Mr. Rivera was arrested on January 18, 1985, and arraigned on January 24, 1985. At his arraignment, the trial court found him indigent and appointed Gregory Meier as counsel. The court allowed Mr. Meier five days in which to file motions and docketed the case for trial on March 18, 1985. On January 25, 1985, Mr. Meier filed a routine discovery motion requesting "Rule 16" and "Brady/Giglio" information. At trial, the court noted the lack of other pretrial motions. *See* record, supp. vol. 5, at 833, 843. The court granted the discovery motion in part and denied it in part and required the prosecution to supply the ordered material by February 15, 1985. Mr. Rivera alleges that the prosecution did not provide discovery until February 21, 1985. On February 27, Mr. Meier moved to withdraw as counsel on grounds of "irreconcilable conflict."[13] Without inquiry or a hearing, the court denied the motion on February 28.

Because of the irreconcilable conflict, Mr. Rivera's parents thereafter retained private counsel, D.D. Hayes, who filed an entry of appearance on March 11, seven days before the scheduled trial date. In light of the multiple counts, two indictments, numerous witnesses in several states, the potential life sentence (actually imposed in this case, as well as an additional 140 years) involved, documentary evidence located in Florida that needed to be gathered and forwarded to Oklahoma by Mr. Rivera's parents, transcripts of prior trials that needed to be read, and thousands of business records already obtained from Florida that needed to be reviewed, Mr. Hayes moved for a continuance on March 13, 1985. Mr. Rivera waived his rights under the Speedy Trial Act and joined in the motion. The trial court denied

---

**12.** Because the defendant naturally assumes that the continuing-series element will be proved by the other offenses charged, one could plausibly argue that there is, in effect, an implicit variance when evidence of uncharged offenses is used instead. Although a showing of prejudice is required for a variance to constitute reversible error, *see supra* note 9, a variance is fatal if the "defendant could not have anticipated from the indictment what the evidence

would be at trial...." *United States v. Freeman,* 514 F.2d 1184, 1189 (10th Cir.1975).

**13.** The conflict apparently developed when Mr. Meier advised a certain course of action during plea negotiations with which defendant disagreed. The consequent communication problems evidently hampered Mr. Meier's ability to prepare Mr. Rivera's defense. *See* record, supp. vol. 2, at 8.

the motion on March 14. The defense received the formal order denying this motion on March 18, the morning the trial began as originally scheduled.

Mr. Hayes orally renewed his motion for continuance on the morning of trial. *See id.* at supp. vol. 2, at 3. Mr. Hayes represented that he was not aware until after being retained

> of the magnitude of paper work and of the necessity of obtaining evidence from Miami, Florida. I don't think that those things were really called to my attention until after I was employed. I realized it was an important case, and I realized there would be a lot of work, but I didn't realize quite the scope of the Government's evidence until I had been employed and seen the discovery.

*Id.* at 5. The prosecutor countered that he understood that Mr. Hayes had

> put in ten and twelve hours a day, and maybe more, each and every day on this case, that he has abandoned his other law practice and devoted the last week entirely to this matter.... and if the truth be known, he knows more about the Government's evidence than the prosecutor does that has had it for a long time.

*Id.* at 5–6. The court overruled the motion, stating:

> [T]here is nothing to indicate other than that the defendant has had a lawyer all of this time, the other two months, appointed by the Court at his request. And comes on at this relatively late hour, although it isn't all that late, relatively later hour and hires his own lawyer, and then because of some action of his, asks the Court to strike the case from the trial docket. And I don't believe that is well taken. I will overrule the motion.

*Id.* at 9. Nevertheless, the court did not allow Mr. Meier to withdraw from the case, ordering instead that he remain so as to assist Mr. Hayes.

Mr. Rivera argues that Mr. Meier's failure to investigate the issues, to obtain further pretrial discovery, and to file appropriate pretrial motions constituted ineffective assistance of counsel. He alleges that Mr.

Meier did little more than interview him in preparation of his defense prior to the retention of Mr. Hayes. He further argues that his harm was compounded when the trial court failed to grant Mr. Hayes' motion for a continuance "to enable him to do what appointed counsel failed to do." Supplementary Brief of Appellant at 10.

> "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

> [A] scheduled trial date should never become such an overarching end that it results in the erosion of the defendant's right to a fair trial. If forcing a defendant to an early trial date substantially impairs his ability to effectively present evidence to rebut the prosecution's case or to establish defenses, then pursuit of the goal of expeditiousness is far more detrimental to our common purposes in the criminal justice system than the delay of a few days or weeks that may be sought.

*United States v. Uptain,* 531 F.2d 1281, 1291 (5th Cir.1976). A trial court should consider several relevant factors when assessing a continuance motion based on claims of inadequate preparation time:

> the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution.... any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit.

*Id.* at 1286–87 (footnotes omitted); *see also United States v. Golub,* 638 F.2d 185, 189 (10th Cir.1980).

The two relevant Supreme Court cases in this area are *Ungar v. Sarafite,* quoted above, and *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The facts in *Ungar* dealt with adequate preparation time for a contempt hearing based

on the defendant's outburst while testifying as a witness in a case. The Court held that "[t]he five days' notice given petitioner was not a constitutionally inadequate time to hire counsel and prepare a defense to a case in which the evidence was fresh, the witnesses and the evidence readily available, the issues limited and clear-cut and the charge revolving about one statement made by Ungar during a recently completed trial." *Ungar,* 376 U.S. at 590, 845 S.Ct. at 850.

■ Unlike the limited evidence and issues in *Ungar,* the case at bar, *in the words of the prosecutor,* involved "37 witnesses, over a hundred documents of evidence [and] a complicated factual situation," record, supp. vol. 2, at 108, as well as "boxes after boxes" of discovery. *Id.,* supp. vol. 3, at 292. Mr. Hayes' seven-day preparation time was clearly inadequate to afford Mr. Rivera a proper defense consistent with due process. Of course, Mr. Meier had nearly two months in which to prepare a defense. The fact of the matter is, however, that little was apparently done during that two-month period, and we refuse to compromise Mr. Rivera's right to have adequate defense preparation because of the possible shortcomings of appointed counsel.

In *Slappy,* the Deputy Public Defender assigned to defend the defendant against various crimes, including rape, robbery, and burglary, supervised an extensive investigation before being hospitalized for emergency surgery. Six days before trial, a senior trial attorney in the Public Defender's Office was assigned the case. Midway through the trial, the defendant personally moved for a continuance until the attorney originally assigned the case could return, claiming that the newly assigned attorney had insufficient time to prepare his defense. The trial attorney, however, attested that he was fully prepared, stating: "My own feeling is that a further continuance would not benefit me in presenting the case." 461 U.S. at 6, 102 S.Ct. at 1614. The Supreme Court upheld the trial court's

denial of a continuance. In this case, unlike in *Slappy,* Mr. Hayes himself pled unreadiness. Moreover, he did not have the benefit of an extensive investigation undertaken by his predecessor.

■ The fear that many defendants would retain counsel shortly before trial and thereby gain a continuance is, we believe, unfounded. The late intercession of Mr. Hayes in this case was well justified. Not until discovery began and plea negotiations were initiated did the irreconcilable conflict between Mr. Rivera and Mr. Meier develop. By that time, they were already dangerously close to trial. "[T]he timing of the motion gave [no] reason to believe that it might have been imposed for purposes of delay." *Uptain,* 531 F.2d at 1290. Furthermore, the court's own denial of Mr. Meier's motion to withdraw prompted the necessity of retaining other counsel late in the day. We believe it will be easy enough to distinguish those cases in which late retention of counsel is not made in good faith but rather only for purposes of delay. Finally, we doubt most defendants would risk delayed preparation of their defense in the hope of being granted an uncertain continuance. The risks are too great.

■ We do not here hold that the failure to grant the continuance, in isolation, *necessarily* constituted an abuse of discretion. *See United States v. Jones,* 730 F.2d 593, 596 (10th Cir.1984) (applying abuse of discretion standard in examining denial of motion for continuance); *United States v. Wilks,* 629 F.2d 669, 673 (10th Cir.1980) (same); *United States v. Erb,* 596 F.2d 412, 421 (10th Cir.) (same), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979). Neither do we hold that Mr. Meier's questionable preparation before retention of Mr. Hayes *by itself* constituted ineffective assistance of counsel under the strict dictates of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), echoed in *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986).[14] Rather, our holding

14. We do note, however, that *Kimmelman* affirms the principle that to be effective, " 'counsel

has a duty to make reasonable investigations or *to make a reasonable decision that makes par-*

is compelled by the *interaction* of these elements with each other and with the lack of notice of use of the uncharged offenses examined in section I. As discussed, one of the harms caused by the lack of notice is the inability to prepare a defense to meet such evidence. That harm was exacerbated in this case by the general impediments to preparing a defense caused by Mr. Meier's lack of early preparation and Mr. Hayes' late entry. Mr. Hayes was still frantically preparing Mr. Rivera's defense during the trial and could not devote "free time" to investigation of the surprise Denver and Milwaukee evidence.[15]

In short, the record convinces us that the hampered representation in this case due to the unique interaction of these three elements permeated the trial and thereby undermined the fundamental fairness guaranteed Mr. Rivera by the due process clause of the fifth amendment. We therefore hold that justice requires retrial not only on the CCE count, for the reasons discussed in part I, but also on the other counts charged in these indictments.

### III.

Various other points have been raised on appeal, but we address only those that, if

well-taken, could result in dismissal rather than a new trial.

### A.

Mr. Rivera claims that, with respect to the continuing criminal enterprise count, the Government failed to establish that he obtained substantial income or resources from his cocaine smuggling. If he is correct, he would be entitled to dismissal of the CCE count rather than to remand for a new trial, but we disagree with his assertion. "The government need not prove a definite amount of net profit—it is sufficient to show substantial gross receipts, gross income *or gross expenditures for resources.*" *Dickey*, 736 F.2d at 588 (emphasis added).

The record is replete with testimony of Mr. Rivera's large cash expenditures in connection with the cocaine importations. Evidence was presented that: (1) the pilots together received $40,000.00 from defendant for their participation in the July, 1982, importation, *see* record, supp. vol. 2, at 178–79; (2) Mr. Rivera purchased a cessna 404 Titan aircraft for $200,000.00, *see id.* at 146–47; (3) defendant also bought two trucks for $10,000.00 cash, *see id.* at 147–48; (4) Messrs. Ariza and Sebolt received cash payments of $10,000.00 and $5,000.00,

ticular investigations unnecessary.'" *Kimmelman*, 106 S.Ct. at 2588 (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066). Failure to adequately investigate for other than strategic or tactical reasons is suspect. *Id.*

**15.** Near the close of the prosecution's case in chief, Mr. Hayes requested a recess over the weekend before putting on their case. He told the court:

> [W]e have been receiving records periodically from Miami which we feel contain exculpatory information. Some of them I received before the trial started and the rest of them I received after the trial started, and I'm supposed to get another box in today. These records—this is the box, and I don't know how many documents it contains, but I would estimate it's about a thousand. Now, we're trying to go through these at night. And to show you that we're not just on a fishing expedition hoping we'll find something, we have found some things that we believe are exculpatory. For example, there was testimony by one of the people at Aerospatiale that it was peculiar that the defendant paid for some stuff by cash, and we've got a document show-

ing that $7300 of the money was paid by cashier's check and not in cash.

> Also, we found that, through going through all of these boxes, we found a receipt where Mr. Rivera stayed on April 11th in Dallas at a motel, and it is a different motel than—the phone number of this motel is different than any of the numbers that were called in Dallas on the 10th. So they didn't reach him at the motel where he was staying.

> And then also there is evidence, there has been evidence that he left in the middle of the night from Dallas and assumed the name Lamar Huggins, and we found a receipt where he, after July 1, was in Miami in a motel registered under his real name.

> We think that if we had time to go through all these documents that we could find additional exculpatory evidence, but we just can't physically do it by starting here at nine o'clock in the morning and going until about five and so forth. Record, supp. vol. 5, at 668–69. Several such documents were, in fact, used in Mr. Rivera's defense.

respectively, from the defendant, *see id.,* supp. vol. 5, at 695–96; (5) a local Oklahoma rancher was paid $4,000.00 in cash by one of defendant's co-conspirators for the one-time use of a makeshift runway in his field, *see id.,* supp. vol. 3, at 442; and (6) defendant supplied one of his co-conspirators with $30,000.00 in cash to buy trucks, trailers, and other equipment and to serve as expense money for the 1983 importation. *See id.,* supp. vol. 4, at 486–87. This evidence was sufficient to prove the substantial income or resources element of the CCE count.

### B.

■ After the defendant pleaded not guilty to all counts at his arraignment, the Government recommended that bond be denied pursuant to the Comprehensive Crime Control Act, 18 U.S.C. § 3142 (Supp. III 1985).[16] *See* record, supp. vol. 1, at 10–13. Defendant requested a continuance before his mandatory detention hearing so as to prepare evidence. The statute entitles a defendant up to five days continuance for such purposes.[17] In answer to the court's question whether defendant wanted the full five days or wanted to schedule the hearing sooner, defense counsel answered, "If Your Honor please, maybe I could get back with the court clerk's office or Your Honor on Monday." *Id.* at 15. The court replied, "All right. I will grant the five days unless you ask for a hearing in a period of time shorter than that." *Id.* at 16. Apparently, defense counsel did not follow up on scheduling a date, and the court did not automatically schedule it on the fifth day. In any event, a detention hearing was never held, and defendant was therefore effectively, although not formally, denied bond.

On appeal, defendant argues:

The appellant submits that the failure to provide him with a bail detention hearing as mandated in 18 U.S.C. 3142(e) is tantamount to the denial of bail without a hearing, and that as such, such action violates the Eighth Amendment to the United States Constitution. For this reason, the Appellant urges the Court to set aside the judgment and sentence of the trial court and dismiss these charges against this Defendant-Appellant.

Brief of Appellant at 4–5.

While the failure to provide defendant with the hearing demanded by the statute is inexcusable, we do not find it a sufficient reason to dismiss all charges against defendant, particularly since his own counsel apparently failed to pursue the matter with the trial court. However, we do order that defendant's detention hearing regarding bond pending retrial on these matters be held as soon as practicable.

### C.

We reject defendant's claims that: (1) the counts with which he was charged were

**16.** The statute provides in pertinent part:

If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial.... Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of Title 18 of the United States Code.

18 U.S.C. § 3142(e).

**17.** The statute provides in pertinent part:

The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community.... The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days. During a continuance, the person shall be detained....

18 U.S.C. § 3142(f).

multiplicitous, *see* Brief of Appellant at 12–14; (2) there was no proof of constructive possession of cocaine, *see id.* at 15; (3) counts II in both indictments are lesser included offenses of Count VI in each, *see id.;* (4) all six conspiracies charged are lesser included offenses of the CCE count, *see id.* at 15–16; and (5) the CCE statute is unconstitutionally vague or was unconstitutional as applied in this case. *See* Supplementary Brief of Appellant at 24–27, 30.

REVERSED and REMANDED for retrial consistent with this opinion.

WESLEY E. BROWN, Senior District Judge, dissenting.

I must respectfully dissent from the majority's opinion that defendant's convictions on all counts must be reversed. I disagree with the conclusion that the defendant's trial was fundamentally unfair. I dissent from the majority's position that evidence of the two drug transactions not specified in the indictment—the Denver and Milwaukee incidents—was impermissibly admitted as proof of a continuing criminal enterprise. I am not persuaded that the trial court abused its discretion in denying a continuance.

In reviewing the record in a case of this kind, we must look to the record as a whole, and view the evidence, and all reasonable inferences which follow, in the light most favorable to the government. *United States v. Tolman,* 826 F.2d 971 (10th Cir.1987). A determination of whether evidence is relevant lies within the sound discretion of the trial court, and that discretion should not be subject to reversal, in the absence of abuse. *United States v. Neal,* 718 F.2d 1505, 1509–10 (10th Cir. 1983), *cert. den.* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34.

Likewise, the trial court has broad discretion in determining whether otherwise relevant evidence should be excluded when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Clearly evidence of other criminal acts is not admissible solely to prove a defendant's criminal disposition, but such evidence may be admissible under Federal Rule of Evidence 404(b) when necessary to show knowledge, motive, identity or intent on the part of a defendant.

Apart from the count involving a continuing criminal enterprise, the two indictments in this case charged defendant and others with at least twelve violations of narcotic laws. The court instructed the jury to consider each defendant and each count of the indictments separately, with the proviso that only if the jury found a defendant to be guilty beyond a reasonable doubt on each count could they find him guilty on that count. As noted, the jury returned verdicts of guilt on all counts, and my review of the record discloses that those verdicts are fully supported by the evidence. Indeed, resolving issues of credibility in favor of the government, the evidence of defendant's guilt was overwhelming.

The trial court admitted evidence concerning the trip by Cecil Ford to Denver, Colorado, and the trip by Ariza and Sebolt to Milwaukee, Wisconsin, which occurred one week before the cocaine importation into Talahina, Oklahoma. This evidence was admitted as being relevant and closely connected and clearly admissible under the provisions of Federal Rule of Evidence 404(b). Such evidence is admissible under the rule for proof of motive, intent, knowledge, plan and absence of mistake or accident when these elements are at issue in the case.

The record discloses that these very matters were at issue during the trial. The government introduced substantial evidence showing that defendant Rivera directed a plan to import and distribute cocaine. Defendant testified that he had no knowledge of any such plan, contending that he was an innocent businessman and merely a victim of circumstances. He offered evidence that his dealings with the six coconspirators were in his capacity as an airplane broker and completely innocent.

In light of this testimony, evidence of defendant's drug transactions during the same period of time in which he disclaimed any knowledge of the plan to import and distribute cocaine was fairly admissible to

show identity, motive, intent, knowledge, plan and absence of mistake or accident. In addition, such evidence tended to prove that defendant acted as a director or manager of criminal activities under the count involving a continuing criminal enterprise.

Criminal intent is a state of mind which negates innocent motive. Evidence of other crimes which tend to undermine a defendant's "innocent explanation" for his activities is clearly admissible, when tested under the standards of Rule 404(b). See *United States v. Rothbart*, 723 F.2d 752 (10th Cir.1983). See also *United States v. Jacobson*, 578 F.2d 863 (10th Cir.1978), *cert. den.* 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 [in prosecution for conspiracy to distribute methamphetamines, where defendant testified he had nothing to do with drugs and was victim of circumstances, evidence of uncharged drug sales properly admitted]; *United States v. Carlson*, 547 F.2d 1346, 1354, n. 5 (8th Cir.1976), *cert. den.* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977) [cocaine transaction occurring six days before crime charged was relevant to show intent, knowledge, common plan or scheme]; *United States v. Smith*, 726 F.2d 183, 185–86 (5th Cir.1984) [testimony that defendant had sold drugs to witness prior to date of charged crime was properly admitted to show scheme by establishing ongoing pattern of drug transactions]; *Llach v. United States*, 739 F.2d 1322, 1327 (8th Cir.1984) [evidence of defendant's involvement in prior importation, distribution and sale of drugs was admissible to prove common scheme or plan].

The defendant claims lack of notice that the government would use "other crimes" evidence. In fact, the defense knew three or four days before the trial started that the government intended to use evidence of the Denver and Milwaukee incidents. (Record, Supp.Vol. V, pp. 688–690). In any event, there is no requirement that the government give notice of its intent to use Rule 404(b) evidence. See Rule 404(b), Fed.R.Evid., and discussion, *Weinstein's Evidence*, Vol. 2, pp. 404–58. Rather, the use of such evidence is committed to the discretion of the trial judge. See *United States v. Kendall*, 766 F.2d 1426, 1440–41

(10th Cir.1985), *cert. den.* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889.

Because the contentions in this case are similar to those disposed of in *United States v. Kendall, supra*, a quote from our holding in that case is appropriate:

" 'There is no general constitutional right to discovery in a criminal case.' *Weatherford v. Bursey*, 429 U.S. 545, 559 [97 S.Ct. 837, 845, 51 L.Ed.2d 30] ...; *See Chaney v. Brown*, 730 F.2d 1334, 1339 (10th Cir.).... The Government is generally not required to disclose its witnesses or their testimony before trial. ... *United States v. Baca*, 494 F.2d 424, 427 (10th Cir.1974). The one significant exception to this rule is exculpatory evidence; the government's failure to disclose such evidence before trial is a violation of due process. *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed. 2d 215].... The Supreme Court has made it clear, however, that *Brady* does not extend beyond such exculpatory evidence. ... (*Brady* does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure.) Because the evidence of which Kendall complains was not exculpatory or discoverable under the Federal Rules of Criminal Procedure, the Government's failure to disclose its 404(b) evidence does not violate due process. Kendall cites no authority, nor have we been able to discover any, for the proposition that pretrial disclosure of Rule 404(b) evidence is required by the Sixth Amendment. Given the clear language of *Weatherford*, 429 U.S. at 559 [97 S.Ct. at 845] ... we conclude that there is no general Sixth Amendment right to such pretrial disclosure."

766 F.2d at 1440–41 (footnote and some citations omitted.)

Here, I believe that evidence of the Denver and Milwaukee trips was admissible under Rule 404(b) as substantive and circumstantial evidence to prove Count VII, which charged defendant with narcotic violations which were a part of a continuing series of narcotic violations undertaken by

defendant Rivera in concert with at least five other persons. 21 U.S.C. § 848.

While due process requires that an indictment give the defendant notice of the charges against him so that he can prepare his defense, and be protected against double jeopardy, it is clear that defendant is protected from double jeopardy since the entire record of the proceedings here may be referred to if a claim arises that a subsequent prosecution constitutes double jeopardy. See *Woodring v. United States,* 376 F.2d 619, 622 (10th Cir.1967), *cert. den.* 389 U.S. 885, 88 S.Ct. 153, 19 L.Ed.2d 182.

Count VII of the indictment specifically put defendant on notice that his acts occurred between January 1, 1983, and July 1, 1983; that his acts were part of a continuing series of violations of the drug laws, the nature of which involved the importation, possession and distribution of cocaine; that he acted as a manager of at least five persons; and that he derived substantial income from his activities. This charge was sufficient to apprise defendant of the nature of the charge against him and to allow him to prepare his defense.

Every court which has considered the issue to date has held that an indictment charging a continuing criminal enterprise is sufficient if it sets forth in the statutory language the elements of a continuing criminal enterprise. *United States v. Johnson,* 575 F.2d 1347, 1356 (5th Cir. 1978), *cert. den.* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454; *United States v. Sperling,* 506 F.2d 1323, 1344 (2nd Cir. 1974), *cert. den.* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439; *United States v. Martinez–Torres,* 556 F.Supp. 1255 (S.D.N. Y.1983); *United States v. Bergdoll,* 412 F.Supp. 1308 (D.Del.1976); *United States v. Collier,* 358 F.Supp. 1351, 1355 (E.D.Mich. 1973). Underlying these holdings is the rationale that the statute does not require that three offenses be listed in the indictment.

Defendant cites *United States v. Becton,* 751 F.2d 250 (8th Cir.1984), *cert. den.* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615, as the most "pertinent" decision on the issue of the sufficiency of the charge of a continuing criminal enterprise. In *Becton,* however, the court never reached the issue of whether the underlying violations must be listed in the charge. Instead, the *Becton* court decided that the defendant had actual notice of the underlying violations and therefore could not challenge the sufficiency of the indictment. *Id.* at 256–57. While it is true that the court said it would be preferable to list the underlying violations in a continuing criminal enterprise count, the court did not say or even imply that due process requires that the violations be listed in the indictment.

A more pertinent decision on the issue at hand is *United States v. Sperling,* 506 F.2d 1323 (2nd Cir.1974), *cert. den.* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439. In that case, the defendant asserted that the indictment charging him with operating a continuing criminal enterprise was deficient "because it failed to specify the names of the persons with whom he acted in concert and as to whom he occupied a position of organizer, and *because it failed to specify each violation constituting the continuing series of violations* proscribed by the statute." *Id.* at 1344 (emphasis added). The court responded: "These contentions are wholly devoid of merit. Count Two (the continuing criminal enterprise count) tracks the statutory language. It contains every element of the offense charged. It satisfies the requirement that a defendant be given notice of the charges against him so that he can prepare his defense and plead the judgment in bar of any future prosecution for the same offense." *Id.* The court went on to say: "[W]e reaffirm that § 848 is aimed at 'the business of trafficking in the prohibited drugs on a continuing, serious, widespread, supervisory, and substantial basis.' (Citation omitted.) The indictment as amplified by the bill of particulars made it crystal clear to Sperling that this was the nature of the government's case and afforded him an opportunity fairly and adequately to prepare his defense." 506

F.2d at 1344–45.[1]

The Ninth Circuit adopted this same rule in *United States v. Sterling,* 742 F.2d 521 (9th Cir.1984), *cert. den.* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985). In *Sterling,* the government introduced evidence at trial of the defendant's drug-related activities dating back to 1971. The government contended that the jury could have used evidence of these violations to satisfy the "continuing series of violations" requirement. The court stated: "We agree with the Second Circuit (the *Sperling* decision) that there is no legal requirement that the violations which make up the continuing series be specifically listed in the indictment." 742 F.2d at 526.

Another case closely related to the present appeal was the district court decision of *United States v. Martinez–Torres, supra,* 556 F.Supp. 1255. In that case, the trial judge instructed the jury that it could find violations of the drug laws (for a continuing criminal charge) other than the specific ones named in the indictment. *Id.* at 1270, n. 11. The defendant objected, arguing that such an instruction would be a violation of due process since the defendant was not given notice of the possible violations. The court, relying on *Sperling,* concluded that the jury could use violations not listed in the indictment. The court noted that the continuing criminal enterprise count did not limit itself to the specific violations named in the indictment.

These cases are consistent with the principles of due process as set forth in Tenth Circuit decisions. It is true that the indictment must sufficiently apprise the defendant of what he must be prepared to meet. *United States v. Salazar,* 720 F.2d 1482, 1486 (10th Cir.1983), *cert. den.* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783. In applying this principle, though, it should be noted that "an indictment generally is sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense." *Id.* [citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 50 (1974)]. Furthermore, the sufficiency of an indictment "is not a question of whether it *could* have been more definite and certain." *Salazar,* 720 F.2d at 1487 [citing *United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed.2d 92 (1953)]. Rather, an indictment may be drafted in general terms so long as it apprises the defendant of the *nature* of the charge against him. *See, e.g., United States v. Boston,* 718 F.2d 1511, 1515 (10th Cir.1983), *cert. den.* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825, *rehearing den.* 467 U.S. 1268, 104 S.Ct. 3563, 82 L.Ed.2d 864 [in indictment for violation of the Hobbs Act, in which interference with commerce is an essential element, it is not necessary for the indictment to allege the exact nature of the interference with commerce].

An indictment is intended to put the defendant on notice of the charges against him; it is not intended to be an exhaustive list of the evidence which the government intends to introduce at trial. *See, e.g., United States v. Williams,* 679 F.2d 504 (5th Cir.1982), *cert. den.* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 963 [Rule 7(c) does

---

**1.** The continuing criminal enterprise count in the *Sperling* case (reported in 692 F.2d at 231–32, n. 5) alleged:

"From on or about the 1st day of May, 1971, and continuously thereafter up to and including the date of the filing of this indictment, ... the defendant, unlawfully ... and knowingly did engage in a continuing criminal enterprise *in that he* unlawfully, willfully, intentionally and knowingly did violate Title 21 [U.S.C.] Section 841(a)(1) and 841(b)(1)(a) *as alleged in Counts Eight, Nine, and Ten of this indictment which are incorporated by reference herein,* which violations were a part of a continuing series of violations of said statutes

undertaken by the defendant in concert with at least five other persons with respect to whom the defendant occupied a position of organizer, supervisor and manager and from which continuing series of violations the defendant obtained substantial income and resources."

On appeal, the Second Circuit overturned Counts Eight, Nine and Ten for insufficient evidence. The Court upheld the continuing criminal enterprise conviction, however, because there was independent evidence supporting that conviction. Thus, *Sperling* was *not* a case where the offenses charged in the indictment were the proof used to satisfy the "continuing series" element. *See* Majority Opinion, p. 916.

not require that the indictment set forth facts and evidentiary details necessary to establish each of the elements of the charged offense]; *United States v. Carr,* 582 F.2d 242 (2nd Cir.1978) [the government is not required to set forth evidentiary matter in an indictment]. *See also United States v. Bernstein,* 533 F.2d 775 (2nd Cir.1976), *cert. den.* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 [bill of particulars may be sought to provide evidentiary details of the charge].

Proving a series of violations in a continuing criminal enterprise is comparable to proving overt acts in a conspiracy charge. In *United States v. Johnson, supra,* 575 F.2d 1347, 1357, the court discussed the continuing criminal enterprise charge, stating: "[I]n an analogous situation, when a conspiracy is alleged the government is not limited to proving at trial only those overt acts which it has stated either in the indictment or in the bill of particulars. Thus, we have held that it is not prejudicial for the government to show other acts of the conspirators occurring during the life of the conspiracy." In a continuing criminal enterprise charge, then, the government should not be limited to proving violations specifically listed in the indictment so long as the indictment gives notice of the nature of the charge.

Defendant had actual notice of the government's intention to use the Denver and Milwaukee acts. As discussed infra, I cannot say that the refusal to continue the case was an abuse of discretion. If the notice was short under the circumstances of this case, it was not error to use such evidence.[2]

## Failure to Grant a Continuance

The standard of review for a denial of continuance is whether or not there has been an abuse of discretion. *United States v. Jones,* 730 F.2d 593, 596 (10th Cir.1984). Furthermore, a denial of a continuance will not be reversed unless the denial was arbitrary and unreasonable *and* materially prejudicial to the defendant. *United States v. West,* 828 F.2d 1468 (10th Cir.1987).

In this case, I am unable to find that the trial judge's denial of a continuance was an abuse of discretion, or to find that defendant was materially prejudiced by such denial.

Attorney Meier was appointed as defense counsel on January 24, 1985, and trial was set for March 18th. He promptly filed a motion for discovery, which was granted. On January 27th, Meier filed a motion to withdraw from the case because of "defendant's lack of confidence" in Meier's judgment. The trial court denied this motion, and its action was proper. See *United States v. Johnson,* 585 F.2d 374 (8th Cir.1978), *cert. den.* 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979).

On March 11, 1985, D.D. Hayes entered his appearance as defendant's retained counsel. On March 13th, Hayes moved for a continuance for the purpose of going over business records recently received from Miami. The motion was denied. On the morning of the trial, March 18th, Hayes renewed his request for a continuance. At

---

**2.** As in other aspects of the government's case, the probative value of the evidence concerning the Denver and Milwaukee trips depended upon the credibility of the witnesses. Rivera's testimony concerning these trips was as follows (Rivera Direct Examination):

"Q. Did you, in fact, ever go to Milwaukee, Wisconsin, in June of '83 to pick up some cocaine and give it to Rogers Ariza and Bill Sebolt?
"A. No, I did not.
"Q. Do you know whether they went up there or not?
"A. I don't have the slightest idea.
"Q. How long have you known about this accusation that you were involved in cocaine transportation in Wisconsin?

"A. About two days before the trial.
"Q. You're not charged with that in the indictment?
"A. No, I'm not.
 (Prosecutor:) Objection, Your Honor, to leading his witness, and it's a legal conclusion on his part.
 The Court: Sustained.
"Q. There has been testimony that you sent Cecil Ford to Colorado on the same sort of mission. Did you do that?
"A. No, I did not.
"Q. How long prior to trial did you know about that accusation?
"A. It was the same thing, about two days (before the trial)."

that time, the trial court inquired into Meier's preparation for trial. Meier stated that he had spent a substantial number of hours on the case. Meier also stated that the defendant had lost confidence "in my willingness to advocate his cause, *which I am ready and able to do.*" (Record, Supp. Vol. II, p. 8. Emphasis supplied.)

The motion for continuance was overruled, but the court directed that Meier continue to represent Rivera, "at government expense," and Meier did sit at the counsel table, assisting the defense throughout the trial.[3]

Under all the circumstances presented in this record, I cannot find that there was a clear abuse of discretion in the denial of a continuance. Defendant was represented in fact by two attorneys throughout his trial, one of which had clearly indicated to the court that he was willing and able to proceed with the trial.

In addition, it is my opinion that defendant has failed to establish that he sustained any prejudice because of the denial of his motion for continuance. The continuance was sought for the purpose of allowing examination of boxes of the defendant's business records. In fact, the defense introduced numerous business records in its attempt to persuade the jury that defendant was a legitimate businessman engaged in brokering the sale of airplanes. He also introduced copies of past due personal bills, etc., for the purpose of establishing that he had no financial resources to support the cocaine importation scheme.[4]

In my view, following an examination of the issues at the trial, a continuance would not have had any effect on the evidence presented at trial. There is not a hint in the record that any documentary evidence exists which could have refuted the testimony of Rivera's six co-conspirators, his former girlfriend and various disinterested witnesses whose testimony was extremely damaging to the defendant. For example, there would be no documentary evidence which could refute Leslie Tottenhoff's testimony that she carried a large amount of cash for the defendant, or the testimony of disinterested witnesses who testified as to defendant's whereabouts on the night of July 1, 1983.

## Ineffective Assistance of Counsel

The defendant has also asserted that he was denied effective assistance of counsel. His claim focuses primarily on attorney Meier's failure to gather defendant's business records together prior to trial.

The standard for determining whether counsel was ineffective is clearly set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on such a claim, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. In my opinion, defendant has failed to make any such showing.

As noted in the discussion of the denial of a continuance, the defendant has not demonstrated even a reasonable possibility that his records contained exculpatory evidence which would have affected the outcome of the trial. Thus, absent a showing of prejudice, the law states that a conviction may not be reversed for lack of preparation on the attorney's part.

Despite the majority's characterization of attorney Meier's preparation as questionable, in my opinion nothing in the record indicates that Meier's representation was inadequate. Indeed, any deficiency in preparation is more likely attributable to the defendant's lack of cooperation with Meier.

In reviewing a claim of ineffective assistance of counsel, the court should keep in mind the dictate of the United States Supreme Court in *Strickland:*

3. Meier took an active part in the defense by cross-examining some of the government's witnesses.

4. The existence of defendant's business records is somewhat in question for defendant testified that sometime after July 1, 1983, two unidentified "lawyer-type" men showed up at his door in Miami, demanding to see his business records on certain aircraft, including the wrecked Cessna. Rivera testified that the two men carried away his files. (Record, Supp.Vol. VII, pp. 1085–86.)

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess (sic) counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Citation omitted.) A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

At 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95.

In discussing the duty to investigate, the Court went on to say that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." At 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

It is clear in the instant case that Meier believed the government's evidence against his client was overwhelming. The record and the jury's verdict bears out that belief. The court cannot conclude that it was unreasonable for Meier to forego spending his time before trial on an exhaustive review of the defendant's records. This is especially true in light of the defendant's lack of cooperation with his attorney and the fact that the records ultimately produc-

ed no exculpatory evidence. *See United States v. Decoster*, 624 F.2d 196, 210 (D.C. Cir. *en banc* 1979) [claims that defense counsel has been ineffective by reason of failure to investigate must be examined in light of strength of the government's case].[5] The simple fact is that the defendant's documentary records could not have addressed the testimony against him in this case. His records could have shown only that he had brokered planes in the past, a fact which does not address the central issues in this case.

The defendant was entitled to a fair trial. I believe the record shows that the trial he received was fundamentally fair. It is apparent that the government produced overwhelming evidence of the defendant's guilt. That evidence convinced an impartial jury of the defendant's guilt, and I believe the jury's decision should be upheld.

**Other Issues On Appeal**

I concur in Section III–A of the majority's opinion, which held there was sufficient evidence to prove "substantial income" for the continuing criminal enterprise charge.

Because I would recommend upholding the jury verdict, I would not require the district court to hold a bond hearing. (Majority Opinion, Section III–B.)

I would also concur in Section III–C of the majority opinion, except that I believe the defendant was improperly sentenced. The defendant was sentenced consecutively on the continuing criminal enterprise charge and on several conspiracy charges. The government concedes on appeal that the drug conspiracy charges under 21 U.S.C. §§ 846 and 963 are lesser included offenses of 21 U.S.C. § 848. Accordingly, I would remand the case in order to correct this sentencing error.

---

**5.** *See also United States v. Katz,* 425 F.2d 928, 930 (2nd Cir.1970), where Judge Friendly stated:
"Determination of the effectiveness of counsel cannot be divorced from the factual situation with which he is confronted. When, as here, the prosecution has an overwhelming case based on documents and the testimony

of disinterested witnesses, there is not too much the best defense attorney can do. If he simply puts the prosecution to its proof and argues its burden to convince the jury beyond a reasonable doubt, the defendant may think him lacking in aggressiveness, and surely will if conviction occurs."